The State of Ohio, Appellee, *v.* Orth, Appellant.*

(No. 1098—Decided November 26, 1957.)

*Mr. Anthony J. Bowers,* prosecuting attorney, for appellee.
*Mr. James C. Blair,* for appellant.

Middleton, P. J. This is an appeal on questions of law from a judgment of the Court of Common Pleas.

The record discloses that the grand jury of Allen County, Ohio, in April 1956, indicted the defendant for the murder of John Mooney while in the perpetration of a robbery. The defendant entered a plea of not guilty, and upon trial his only defense was an alibi. The jury returned a verdict of not guilty, and the defendant was ordered discharged. Subsequently, the defendant was placed on trial on an indictment returned by the same grand jury charging the defendant with armed robbery. His plea to this indictment was not guilty. Upon trial, the defendant was found guilty and, on motion, was granted a new

*Appeal dismissed, 167 Ohio St., 388.

trial. Upon retrial, the defendant filed a motion to allow him to withdraw his plea of not guilty, for the purpose of entering a plea of former jeopardy and other defenses allowed by law. This motion the court overruled. The defendant then filed a motion for an order permitting him to enter the defense of *res judicata* in addition to his plea of not guilty and tendered therewith what is designated as "defense of *res judicata*." This motion was also overruled by the court.

The trial proceeded on defendant's plea of not guilty. The jury returned a verdict of guilty, and the defendant was sentenced to the Ohio Penitentiary. From that judgment the defendant prosecutes his appeal.

The defendant assigns as error, the following:

1. For error of law in overruling the defendant's motion for leave to plead the defense of *res judicata* and in failing to dismiss the indictment herein on the grounds that the doctrine of *res judicata* precludes retrial of the issue of the defendant's presence at the scene of the crime.

2. For errors of law occurring at the trial in the admission of evidence over the objection of the defendant.

3. For error of law in overruling defendant's motion at the close of the state's case to dismiss the indictment and to discharge the jury for the reason that the state had not proven a prima facie case, and for other errors manifest on the face of the record.

The record reveals that the indictment for murder and the indictment for armed robbery grew out of the same transaction which occurred at the G & G Cafe in Lima, Ohio, on December 10, 1954.

The basic question presented by the first assignment of error is whether the defendant should have been permitted by the court to enter the defense of *res judicata* in addition to his plea of not guilty.

Section 2943.03, Revised Code, provides:

"Pleas to an indictment or information are:

"(A) Guilty;

"(B) Not guilty;

"(C) A former judgment of conviction or acquittal of the offense;

"(D) Once in jeopardy;

"(E) Not guilty by reason of insanity.

"A defendant who does not plead guilty may enter one or more of the other pleas. * * *. The court may, for good cause shown, allow a change of plea at any time before the commencement of the trial."

Section 10, Article I of the Constitution of the state of Ohio, provides that:

"No person shall be twice put in jeopardy for the same offense."

Article V, Amendments, U. S. Constitution, provides:

"* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *"

The constitutional guaranties apply only to being placed in jeopardy more than once for the same offense.

As stated in the opinion in *State* v. *Rose*, 89 Ohio St., 383, at page 386, 106 N. E., 50, L. R. A. 1915A, 256, "the words 'same offense' mean same offense, not the same transaction, not the same acts, not the same circumstances or same situation."

The defendant in the case at bar, after his motion for leave to interpose the defense of once in jeopardy was overruled, abandoned this defense and does not now claim former jeopardy. However, the same result is sought by interposing the defense of *res judicata*, that the verdict of not guilty in the murder trial was a former acquittal and estopped the state from trial of the defendant in the instant case on the charge of armed robbery.

Upon the filing of his motion for leave to enter the defense of *res judicata*, submitting to the court his defense of *res judicata* setting forth the facts he claims in support of his motion, the question presented was a question of law for the court. No additional facts than those submitted by the defendant were needed or required by the court in ruling on the motion.

It is the claim of the defendant that the only issue for the jury to determine in the robbery trial was the same issue of fact that was decided by the jury in the murder trial, to wit, the alibi of the defendant; that the verdict of not guilty in the murder trial was a former acquittal; and that the doctrine of *res judicata* applies.

There is nothing in the record to support defendant's claim, which claim is strongly disputed by the state, that in the murder trial the only issue was the issue of alibi. The issue of alibi was only one of the issues involved. There were many others.

The record is silent as to the issues upon which the murder case was tried. However, the nature of the charge involved a number of essential elements constituting the crime of murder while in the perpetration of a robbery, which the state was required to prove beyond a reasonable doubt. Failure upon the part of the state to prove any one of the essential elements required a verdict of acquittal.

Failure of the defendant to deny or dispute any of the issues involved would not relieve the state from the necessity to prove all the essential elements constituting the crime, beyond a reasonable doubt. This truth was recognized by defendant's counsel when, in his opening statement in the case at bar, he stated:

"Under our plea of not guilty the prosecution has to prove each and every element of their case by evidence beyond a reasonable doubt."

The plea of former judgment of conviction or acquittal of the offense and the plea of once in jeopardy differ only in the extent and character of the elements constituting the defense.

"As a general rule, a person is in legal jeopardy when he is put on trial, after a proper arraignment and plea, before a court of competent jurisdiction, on an indictment or information which is sufficient in form and substance to sustain a conviction, and a legally constituted jury has been charged with his deliverance." 15 Ohio Jurisprudence (2d), 444, Section 261.

The elements constituting a plea of former judgment of conviction or acquittal of the offense will also support a plea of once in jeopardy. However, a plea of former judgment of conviction or acquittal of the offense is limited to a final judgment entered upon the merits. The former judgment of conviction or acquittal must be for the same offense as is the case where the defense is "once in jeopardy."

As stated in the opinion of the Court of Appeals in the case of *Duvall* v. *State*, 18 Ohio App., 471, at page 475:

"* * * In a criminal proceeding there is but one issue, and that is the guilt or innocence of the accused. There are various essential .elements constituting the crime, each of which the state is bound to prove beyond a reasonable doubt, and failure upon the part of the state to so establish any one of the essential elements of the crime requires a judgment of acquittal. It is quite evident that a judgment of former conviction necessarily involves a finding in favor of the state upon each of the essential elements of the crime, whereas a verdict and judgment of acquittal may result from a failure of the state to satisfy the jury beyond a reasonable doubt as to any one of those essential elements. The doctrine of *res judicata* is not to be applied to the determination of every controverted fact that may be presented in the trial of a case. A plea of *res judicata* as to such controverted facts cannot be substituted for a plea of former jeopardy. * * *

"* * *

"The doctrine of *res judicata* is applicable only where there has been a definite adjudication of the matter in controversy between the parties. In a criminal case, where the defendant is relying on the defense of alibi, it is not incumbent upon him to prove such defense by a preponderance of the evidence, and the jury is therefore charged by the court that the defendant is not required to prove the defense of alibi by a preponderance of the evidence, but that it is sufficient if his evidence upon that subject, taken in connection with all the other evidence in the case, raises a reasonable doubt in the mind of the jury of the guilt of the defendant. When the evidence of the defendant need only be sufficient to raise a reasonable doubt in the mind of the jury of the guilt of the defendant in order to make it the duty of the jury to render a verdict of acquittal, a verdict of acquittal is far from being an affirmative finding in favor of the defendant upon his defense of alibi. * * *"

Regardless of what the holdings may be in other jurisdictions, the question here involved has been clearly and definitely determined by the Supreme Court of Ohio in the case of *Duvall* v. *State,* 111 Ohio St., 657, 146 N. E., 90. The facts in that case are, in the opinion of this court, on all fours with the case at bar.

In the *Duvall case,* Samuel Duvall was indicted for murder in the first degree while attempting to perpetrate a robbery upon one John C. Herbruck. He entered a plea of not guilty and was put on trial, his defense being that of alibi. The jury returned a verdict of not guilty. Thereafter, the grand jury returned an indictment against the defendant for the offense of robbery, charging him with robbing one John C. Herbruck, the indictment being based upon the same transaction embraced in the charge of murder in the first degree upon which he had already been acquitted. To the indictment for robbery, Duvall filed a plea in bar and a plea of *res judicata,* whereupon the state filed a demurrer. The court sustained the demurrer and the defendant was arraigned and stood mute, and the court entered a plea of not guilty. Upon trial, the jury returned a verdict of guilty as charged in the indictment. Error was prosecuted to the Court of Appeals and the Supreme Court. The Supreme Court affirmed the judgments of the Court of of Appeals and the Court of Common Pleas.

The law in the *Duvall case,* as set forth in the syllabus, reads as follows:

"1. An acquittal of a defendant upon the charge of murder in the first degree, while attempting to perpetrate a robbery (under Section 12400, General Code), is not a bar to a prosecution for the crime of robbery (under Section 12432, General Code), even though committed upon the same person named in the former charge, and the robbery was a part of the same criminal act referred to in the indictment for murder.

"2. The doctrine of *res adjudicata* is not applicable where one is being tried for one of the substantive offenses embraced in a conspiracy to commit a robbery, and the former trial and acquittal was for another offense committed in pursuance of the same conspiracy, to-wit, murder in attempting to perpetrate a robbery, additional elements being necessary to establish the latter charge; the two are, therefore, separate and distinct offenses. (*Patterson* v. *State,* 96 Ohio St., 90, 117 N. E., 169, L. R. A. 1918A, 583, approved and followed.)

"3. A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them

would have been sufficient to warrant a conviction upon the other. A single act may be an offense against two statutes; and if either statute requires proof of an additional fact, an acquittal of the offense requiring proof of the additional fact does not exempt the defendant from prosecution and punishment under the statute which does not require proof of such additional fact.''

In the case at bar the doctrine of *res judicata* does not apply, and on the undisputed facts presented, the court properly overruled defendant's motion to permit him to enter the defense of *res judicata* in addition to his plea of not guilty.

On the authority of *Duvall* v. *State, supra* (111 Ohio St., 657), the court finds the first assignment of error not well taken.

Defendant's second assignment of error is:

''For errors of law occurring at the trial in the admission of evidence over the objection of defendant.''

In the presentation of the state's case, William Swearingen was called as a witness on behalf of the state. His evidence discloses that at the time of testifying he was serving a sentence in the Ohio Penitentiary on a plea of guilty to the charge of armed robbery of the G & G Cafe in Lima on December 10, 1954, being the same offense involved in this action. During most of his examination, the witness, in answer to questions asked by the prosecuting attorney, stated either that he did not remember or did not know, or he refused to answer. Upon cross-examination by defendant's counsel, the first question asked of the witness was: ''Mr. Swearingen, are you big enough man to sit there on the witness stand this morning and tell us the truth, the whole truth and nothing but the truth, and take the consequences?'' His answer was, ''I am, but I won't.''

After this witness testified, the prosecuting attorney offered in evidence the testimony given by the witness at the former trial of the defendant for armed robbery. The complete testimony of the witness was, with the express consent of defendant's counsel, admitted in evidence as an exhibit. The testimony given by this witness when testifying in the defendant's murder trial was, with the express consent of counsel for the defendant, also admitted in evidence as an exhibit.

The testimony objected to, the admission of which is claimed

error, was given by Joseph Garlock and Ronald Cook, officers of the Lima Police Department.

The testimony of officer Cook complained of is as follows:

"Q. Now, after he was apprehended and returned, or before you came to Lima, did William Swearingen give you a statement? A. William Swearingen.

"Mr. Blair: Objection.

"The Court: Objection overruled.

"Q. Let me ask the question again. Now after he was apprehended and returned or before you came to Lima, did William Swearingen give you a statement? A. William Swearingen, on the thirty-four hour railroad trip back, gave us a verbal statement numerous times. In fact, the almost entire trip back it was the subject of conversation.

"Mr. Blair: Now you reread the question, Mr. Bowers. The record shows I objected to that question again.

"The Court: Objection overruled.

"Q. And the statement was with reference to what?

"Mr. Blair: Objection.

"The Court: Overruled.

"A. It was to the December 10th, 1954, robbery of the G & G Cafe and the part that he played in it and his accomplices.

"Q. After he had returned during a period of five or six months, have you talked to Swearingen at various times?

"Mr. Blair: Objection.

"The Court: Overruled.

"A. Yes, no less than half a dozen times have we talked to him since his return to Lima.

"Q. And after returning to Lima, did he talk to me in your presence?

"Mr. Blair: Objection.

"A. Yes, he did.

"The Court: Overruled.

"A. Yes, he did. In fact, you were there on numerous occasions.

"Q. And was the statement that he made to you during this interval the same statement that he gave you on the way back?

"Mr. Blair: Objection.
"The Court: Overruled."
The testimony of Officer Garlock complained of is as follows:

"Q. Now at any time on your return trip did you have a conversation with Mr. Swearingen in regard to the robbery of the G & G Cafe?

"Mr. Blair: Objection.
"A. Yes, sir.
"The Court: Overruled.

"Q. And what was the subject or substance of that conversation?

"Mr. Blair: Objection.
"The Court: Overruled, but you may want to object while he is answering.

"Mr. Blair: Well.
"Q. What was the subject of that conversation?
"Mr. Blair: It would be hard to do.
"The Court: We'll catch it.

"A. The subject of the conversation was the robbery of the G & G Cafe.

"Q. State whether or not he told you his part in the G & G robbery?

"Mr. Blair: Objection.
"The Court: Overruled.
"A. He did.

"Q. Now state to this court and jury as to whether or not he told you facts that only he, if he was present, would have known of the G & G Cafe?

"Mr. Blair: Objection.
"The Court: Overruled.
"A. He did.

"Q. And what were some of the instances that he told you?
"Mr. Blair: Objection.
"The Court: Overruled.

"A. The facts he advanced—that William Swearingen related to us enroute to Lima were several, one being the position of the car that was used in the robbery was parked; another

was the fact that there were two front doors at the G & G Cafe
and that he had become momentarily confused when he had at-
tempted to enter the front door the night of the robbery; an-
other one was that there was a phone or was a phone located to
the right of the front door on the bar at the G & G Cafe; an-
other was that the G & G Cafe was partitioned into two rooms
and that a man was shot during the robbery fell directly in
front of him on the floor, and that he had to go out to his left
around a partition when he went out the back door of the G &
G Cafe when he left.

"Q. Now state whether or not any time in addition to those
items did he tell you also in detail his participation in the rob-
bery? A. Yes, sir.

"Mr. Blair: Objection.

"The Court: Overruled."

After a careful check of this testimony with the testimony
given by Swearingen on the witness stand, we find nothing in
the testimony of the two police officers which contradicts or in
any way impeaches the witness Swearingen. Nothing in this
testimony was denied by Swearingen while on the stand. Noth-
ing in this testimony implicates the defendant Orth. All state-
ments claimed to have been made to the police officers were pre-
viously testified to by Swearingen in the former trials of the
defendant, as shown by exhibits N and O admitted in evidence
with the express consent of defendant's counsel. If there was
any error committed by the court in admitting the testimony
complained of, it was not prejudicial to the defendant. De-
fendant's second assignment of error is not well taken.

Neither the record of the murder trial nor the record of the
first robbery trial, except for exhibits N and O and the testi-
mony of one of the police officers hereinbefore referred to, was
offered or made part of the record of this case, and this court is
not permitted to consider same in disposing of any of appel-
lant's assignments of error.

The court has carefully studied the record in this case and
finds that there is substantial and credible evidence to support
the verdict of the jury, and the defendant's third assignment
of error is overruled.

No other error is presented or argued by defendant in his brief, and the judgment of the court below is affirmed.

*Judgment affirmed.*

GUERNSEY, J., concurs.

YOUNGER, J., dissenting. The necessity for my dissent from the opinion of the other members of this court arises solely from my inability to feel that the case of *Duvall* v. *State*, 111 Ohio St., 657, 146 N. E., 90, requires an affirmance of the finding of guilty and judgment in the court below.

The main assignment of error involved here is the action of the trial court in overruling defendant's motion for leave to plead the defense of *res judicata*. If *res judicata* is a defense to a criminal prosecution, then the trial court was in error in overruling the motion, and the denying to the accused of the right to make such a plea would, in my opinion, be an abuse of discretion requiring a reversal.

"A comprehensive definition of *res judicata* is as follows: 'The doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.' 30 American Jurisprudence, 908, Section 161." *Norwood* v. *McDonald et al., Admrs.*, 142 Ohio St., 299, 52 N. E. (2d), 67.

A pertinent observation is made in *Harris* v. *State*, 193 Ga., 109, 120, 17 S. E. (2d), 573, 147 A. L. R., 980, as follows:

"* * * It is interesting to note that one of the earliest formulations of essential principles of *res judicata* was made in a criminal case, the celebrated English case of *Rex* v. *Duchess of Kingston*, 20 Howell's State Trials, 538 (2 Smith's Leading Cases, part 2, 8th ed., 734 [784])."

The Supreme Court of the United States has applied *res judicata* to a criminal prosecution and in *Sealfon* v. *United States* (1948), 332 U. S., 575, 578, 92 L. Ed., 180, 68 S. Ct., 237, says:

"But *res judicata* may be a defense in a second prosecution. That doctrine applies to criminal as well as civil proceedings [citations] * * * and operates to conclude those matters in issue which the verdict determined though the offense be different."

However, our concern here is whether *res judicata* operates in criminal proceedings in Ohio. The unequivocal statement is made in 15 Ohio Jurisprudence (2d), 442, Section 259, as follows:

"The doctrine of *res judicata,* by which a fact or matter distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties, is applicable to judgments in criminal prosecutions."

So far as I have been able to ascertain, the doctrine has never been affirmatively recognized or applied by the courts of Ohio, although in the *Duvall case, supra* (111 Ohio St., 657), upon which the majority of this court bases its decision herein, the Supreme Court apparently recognizes the doctrine but holds that under the facts of that case it is inapplicable, when it says, page 669:

"* * * It may be said, therefore, that the doctrine of *res adjudicata* is not applicable where one is being tried for one of the substantive offenses embraced in a conspiracy to do an unlawful act, and the former trial was for another offense committed in pursuance of the same conspiracy. * * *

"We are of opinion that the offense of murder in attempting to perpetrate a robbery and the offense of robbery are separate and distinct offenses, and a general verdict of not guilty returned by the jury under the former charge, to-wit, murder in attempting to perpetrate a robbery, is not necessarily an adjudication of the fact of the guilt or innocence of the defendant in the commission of the robbery; that they are not the same offense, and that the plea of former jeopardy or *res adjudicata* does not apply."

Let us examine this holding further. It is apparent at the outset that the *Duvall case* attempts to examine the doctrine of *res judicata* in connection with the constitutional prohibition against double jeopardy which is provided for in Section 10,

Article I of the Ohio Constitution, as follows: "* * * No person shall be twice put in jeopardy for the same offense." Of course, *res judicata* cannot be successfully pegged to double jeopardy. The doctrines are separate and distinct. Double jeopardy applies only to the same offense. *Res judicata* applies equally to separate and distinct causes of action or offenses. Double jeopardy is a narrow or specific provision contained in the Bill of Rights of the Constitution as a safeguard or protection against a specific abuse or violation of an inherent right. *Res judicata* is a rule of law. It "may be said to inhere in the legal systems of all civilized nations as an obvious rule of expediency, public policy, public tranquillity, and natural justice, which do not favor a multiplicity of actions, and which require that litigation shall not be interminable. To hold otherwise might be dangerous, often oppressive, and would open an endless avenue to contention and vexation. Without this fundamental doctrine in full force and effect it is declared that the proper enforcement of law would be quite impossible, as it would unsettle all the determinations of law." 23 Ohio Jurisprudence, 962, Section 731.

Res judicata is, therefore, not dependent for its existence upon any constitutional provision. If the doctrine is to apply in criminal jurisprudence it must stand on its own feet. The square peg of *res judicata* cannot be fitted in the round hole of double jeopardy. If the doctrine is to be emasculated by being limited to the same offense, it should be abandoned entirely, as double jeopardy is ample protection against subsequent prosecutions for the same offense.

That the Supreme Court is aware that the applicability of *res judicata,* or estoppel by previous judgment, has not been definitely settled in Ohio, is illustrated by the recent case (1951) of *State* v. *Martin,* 154 Ohio St., 539, 96 N. E. (2d), 776. In that case, Martin, the driver of a motor vehicle was charged with manslaughter after his motor vehicle hit a motorcycle upon which two men were riding and both were instantly killed in the collision. He was indicted under two separate indictments, each charging the unintentional killing of one man. He was tried on the first indictment for the killing of one John Police and found not guilty. Upon his second trial, for killing John

Batori, he plead former jeopardy, claiming his offense was the alleged unlawful operation of his motor vehicle at the time of the collision, and that whether one or two persons were killed at that time was immaterial, as it occurred as the result of one act which had previously, in the Police case, been declared not unlawful by his acquittal. However, the court held that the indictments were not for the unlawful operation of his motor vehicle but were for manslaughter of the two individuals; that they were therefore separate offenses—not the same—and that double jeopardy was not a good plea. In that case Martin did not plead *res judicata*, nor was it included in the assignment of errors nor argued in the briefs, but it was commented on at the time of oral arguments, and the court, exercising the prerogative of reviewing courts, did not consider the question of *res judicata*, since it had neither been assigned as error nor argued in the briefs. In his concurring opinion, Judge Taft says, at page 545 (154 Ohio St.):

"* * * Therefore, I concur in the apparent decision of the majority that they should not exercise their discretion to consider that question [the so-called doctrine of estoppel by judgment against the state in a criminal proceeding] * * * since this decision will not prevent a full consideration of that question if it is properly raised and argued in some later case."

I am of the opinion that in overruling the defendant's motion for leave to plead *res judicata* and in denying him that right, the trial court erred prejudicially to the defendant. The entry overruling the motion shows that the court considered the entire proceedings in the murder case. As a matter of fact, the same judge who overruled the motion sat in the murder case itself and was thoroughly familiar with that record. Although that record was not made a part of the record in this appeal, the defendant in his brief claims—and it is not denied by the appellee—that in the opening statement counsel stated to the jury that the evidence would show that the defendant Orth was at home at the time of the robbery and therefore did not participate in it and that throughout the trial no other issue in the murder case was in dispute. Therefore the defendant admitted that a robbery of the G & G Cafe took place at the time and

place the state claimed and that during the course of the holdup and in connection therewith a man was killed.

Upon these facts and the admissions made, the only issue for the jury to decide in the murder case was: "Has the state proven by evidence beyond a reasonable doubt that Orth was present and participated in the robbery?" If so, he was automatically guilty of murder. This was the exact issue presented to the jury in the present robbery case. Thus, the core of the prosecutor's case was, in each case, the same. In my opinion the evidence required to support a conviction upon one of these charges would have been sufficient to warrant a conviction on the other and, under the third paragraph of the syllabus of the *Duvall case, supra* (111 Ohio St., 657), the doctrine of *res judicata* is applicable.

The appellee—the state—claims in its brief that the not guilty verdict in the murder case does not prove that the jury decided that the defendant was not present or participated in the robbery, and says: "The state may have failed to prove any other element of the crime beyond a reasonable doubt and that would then be the basis of the verdict by the jury." What other elements did the state have to prove? In murder in the perpetration of a robbery the state does not need to prove that the killing was wilful. It does not need to prove that the killing was premeditated or done after deliberation. All the state had to prove was that Orth was present and participated in the robbery in which John Mooney was killed. It did not need to prove that Orth had a gun. It did not need to prove that Orth pulled the trigger. It did not need to prove that the robbery occurred in Allen County, Ohio; that the robbers met at a certain place in Marion or drove a certain make of automobile of a certain color to Lima and parked it in a certain place; that so many dollars were taken from the cash register; that the pocketbooks of so many patrons were taken; that after the robbery the money was divided between the robbers; or that the guns used were afterwards thrown in a lake and subsequently recovered by the police. These facts were either admitted by the defendant or were entirely immaterial as far as the issue in the murder case was concerned.

It is true that a defense of alibi does not need to be proved conclusively to a jury. It is sufficient if it creates a reasonable doubt in the mind of the jury as to the defendant's guilt. Therefore, whether we accept the defendant's contention that the acquittal in the murder case definitely established the fact that the defendant was not present or participating in the robbery, or whether we accept the state's contention—which is the only other alternative—that the defense of alibi merely created a reasonable doubt in the mind of the jury, the fact remains that a vital issue has been decided on the merits, between the state of Ohio and the defendant Orth, by a duly empaneled jury, in a court of competent jurisdiction, upon which issue the court entered judgment from which no appeal was taken and which has all the attributes of finality. A verdict of not guilty because of reasonable doubt is just as effective and final and legal as a verdict of not guilty founded upon any other defense, and in my opinion it makes no difference whether the not guilty verdict was returned by the jury because in its opinion the alibi was established or whether it was returned because of reasonable doubt. The issue has been decided, no matter what the reason for the verdict may have been.

In my opinion, therefore, the judgment of the lower court should be reversed and, the defense of *res judicata* being good as a matter of law, the defendant should be discharged.