Griffith, J.
There are two assignments of error set forth by tbe defendant.
1. Tbe trial court erred in returning two verdicts of guilty of first degree murder when only one general verdict could have been returned, and in imposing two sentences for tbe commission of but one crime.
2. Tbe court erred in sentencing defendant to death for first degree murder without trial by jury, based upon a plea of guilty entered by defendant, who at the time did not properly understand tbe nature and consequences of such plea of guilty, *392 and in refusing to permit defendant to withdraw such plea of guilty.
The evidence shows that on March 4, 1961, Ferguson, with one Louis Thornton, entered the drugstore of the deceased, Benjamin Kaufman, in the city of Cleveland, with the intent and purpose of committing a robbery.
Upon entering the store, Ferguson and Thornton separated, Thornton approaching a clerk, one Walter Manning, who was standing behind a counter at the front of the store. Pointing a gun at Manning, Thornton told him, “Give me the money out of your cash register.” Manning responded, “Don’t shoot. Get it yourself,” which Thornton, walking around the counter, proceeded to do.
In the meantime, Ferguson proceeded to the back of the store, where Kaufman and a customer, one Wilbert Mallory, were seated. As Ferguson approached them, Mallory stood up and started to the front of the store. Ferguson, pointing a gun at Mallory, said, “This is a hold-up,” whereupon Mallory raised his hands and backed away from him, and, when Kaufman called out, “Take the money. Don’t shoot,” Ferguson slapped Kaufman in the face, knocking his glasses off. Mallory continued to retreat until he reached the storeroom at the rear of the building, and as he dashed down a stairway to hide in the basement he heard what he described as a shot.
Manning testified that, hearing the shot, he turned and looked toward the rear of the store where the sound came from; that he saw Kaufman running towards the front of the store, shouting, “Take the money, take the money,” with Ferguson in pursuit; that Ferguson caught up with Kaufman at the front door; that Thornton joined Ferguson in a struggle to subdue Kaufman; that “Then I saw Ferguson aim a gun at ‘Doc’s’ [Kaufman’s] head and then I saw, I heard a shot. I heard a shot then ’ ’; that Kaufman then ‘ ‘ stumbled back and fell down ’ ’ ; and that Ferguson and Thornton ran out the door and disappeared.
Kaufman died in the hospital approximately one hour later, the deputy coroner testifying that the death was a result of gunshot wounds in the head, with skull and brain perforations, and in the right shoulder, with perforations of the lung and hemothorax.
*393 Ferguson was apprehended hy the police within minutes of the shooting, and a 0.32 caliber 5-shot revolver, which Ferguson admitted he had used in the robbery and from which the fatal shot was fired, was found in his trouser’s right rear pocket. Examination of the revolver disclosed that there were three live cartridges and two empty cartridge cases in the cylinder.
The defendant signed three written confessions after he was taken into custody, the first two of which, having to do with the robbery and shooting, were admitted in evidence without objection, whereas the third, in which he admitted three previous armed robberies within a period of three months prior to March 4, 1961, was admitted over objection.
In the second confession, Ferguson admitted that he had participated in the armed robbery of Kaufman’s store, using the revolver which was found in his pocket within minutes of the shooting and from which the fatal shots were fired; admitted ownership of the revolver; admitted that the shot which struck Kaufman in the shoulder at the rear of the store came from his revolver but claimed that the revolver accidentally discharged when Kaufman jumped up and knocked it out of his hand; and admitted that, in the struggle with Kaufman at the front door, he had that revolver in his right hand but claimed that the revolver accidentally discharged as he was attempting to hit Kaufman over the head with it.
We will now consider the first part of defendant’s first assignment of error. Defendant contends that a person cannot be guilty of two separate crimes of murder in the first degree when only one person is killed.
In considering the first part of defendant’s first assignment of error, for the purposes of this opinion we will not take cognizance of the effect of defendant’s pleas of guilty to both counts of the indictment as an admission of his guilt of two separate crimes of murder, and we will not take cognizance of the fact that in a first degree murder trial by a three-judge court, the court does not return a verdict, as defendant contends. By the provisions of Section 2945.06, Revised Code, guilt having been admitted, the court “shall determine the degree of the crime, and pronounce sentence accordingly.”
Section 2901.01, Revised Code, provides:
*394 “No person shall purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery, or burglary, kill another.”
First, does this Code section define one crime of first degree murder?, and second, does it empower the court to return two separate verdicts and pronounce two separate sentences against a defendant for the commission of two crimes of first degree murder? In other words, does this statute define three separate crimes of murder in the first degree, or just one ? Admittedly, the defendant killed only one person. The defendant contends that, whether he did it by deliberate and premeditated malice or in the perpetration of a robbery, the act of killing constitutes but a single offense and the statute merely sets out three methods by which the first degree murder of a person may be committed.
The constitutional guaranty contained in Section 10, Article I of the Ohio Constitution, and the Fifth Amendment of the federal Constitution, that no person shall “be twice put in jeopardy,” applies only to being placed in jeopardy more than once for the same offense and not two separate offenses arising out of the same transaction, facts, circumstances or situation. State v. Orth, 106 Ohio App., 35.
Murder committed in the perpetration of a robbery and murder committed with deliberate and premeditated malice are not one and the same offense, even though the victim is one and the same person. The test to be applied here is: Are the facts necessary to secure a conviction under one count of the indictment sufficient to secure a conviction under the other count. If the facts which would support a conviction under one count would not necessarily support a conviction under the other count, then the offenses charged are separate and distinct crimes, although the offenses charged may have been committed by the same act or acts.
In 15 Ohio Jurisprudence (2d), 469, Section 294, the rule laid down is as follows:
“However, a single act may be an offense against two statutes; and if either statute requires proof of an additional fact, an acquittal of the offense requiring proof of the additional fact *395 does not exempt the defendant from prosecution and punishment under the statute which does not require proof of such additional fact. The Legislature may carve out of a single act or transaction several crimes or offenses, so that an individual may at the same time, and in the same transaction, commit several separate or distinct crimes, and be prosecuted for all the crimes committed, without the prosecution for one crime being a bar to the prosecution or prosecutions for the other crimes.”
A defendant by means of one act may commit several offenses. City of Akron v. Kline, 165 Ohio St., 322. In such a case, the following questions arise: (1) May the defendant be charged with each offense?, (2) if so, may he be convicted of each offense?, and (3), if so, may he be sentenced for each offense ?
The first and second questions are answered by the provisions of Section 2941.04, Revised Code, that a defendant may be indicted and convicted for “two or more different offenses connected together in their commission, or different statements of the same offense.”
The third question is answered by the provisions of Section 2945.06, Revised Code, that, upon a plea of guilty to murder in the first degree, “a court composed of three judges shall examine the witnesses, determine the degree of crime, and pronounce sentence accordingly.”
One count in the indictment charges that the defendant “unlawfully, purposely and while attempting to perpetrate a robbery, killed Benjamin Kaufman,” whereas the other count in the indictment charges that the defendant “unlawfully, purposely and of deliberate and premeditated malice killed Benjamin Kaufman.” Each count charges a separate and distinct offense of first degree murder under Section 2901.01, Revised Code.
Under the state and federal Constitutions, no person shall be twice put in jeopardy for the same offense. Evidence which would be sufficient to sustain a conviction for unlawfully and purposely killing another while perpetrating or attempting to perpetrate a robbery would not necessarily be sufficient to sustain a conviction for unlawfully, purposely and of deliberate and premeditated malice killing another. A single act may *396 constitute several offenses by virtue of separate statutes. Atkins v. State, 115 Ohio St., 542.
“An acquittal of a defendant upon the charge of murder in the first degree, while attempting to perpetrate a robbery (under Section 12400, General Code), is not a bar to a prosecution for the crime of robbery (under Section 12432, General Code), even though committed upon the same person named in the former charge, and the robbery was a part of the same criminal act referred to in the indictment for murder. ’ ’ Duvall v. State, 111 Ohio St., 657.
In cases such as this, where two valid sentences have been imposed for a single murder, one of death and one of life imprisonment, that sentence which calls for the highest and most severe punishment — death—will be imposed, with the life sentence, in effect, being surplusage.
The second claim of error, in substance, charges that defendant was sentenced to death for first degree murder without trial by a jury, based upon a plea of guilty. He contends that at the time he entered his plea he did not understand the nature and consequences of his plea of guilty, and that the court refused to permit him to withdraw his plea of guilty.
The defendant’s pleas of guilty to both counts of the indictment were not made until after a jury had been impaneled, trial commenced and the testimony of an eyewitness to the shooting had been presented by the state.
This second assignment of error is not well taken. There is no provision in our Constitution prohibiting a three-judge court in a first degree murder case, on a plea of guilty, to determine the degree of crime without the intervention of a jury. Section 2945.06, Revised Code, which does make such provision, reads in part as follows:
“If the accused pleads guilty of murder in the first degree, a court composed of three judges shall examine the witnesses, determine the degree of crime, and pronounce sentence accordingly.”
The remaining issue then to be decided has to do with the penalty.
The claim that the defendant was not fully and properlv advised of the consequences of withdrawing his plea of not *397 guilty and entering pleas of guilty is not supported by the record. He was afforded two lawyers of unquestionable ability and integrity; his family participated with counsel in considering this question; and there is not a shred of proof that the defendant, before his sentence, was desirous of maintaining a plea of not guilty and wished to have his case submitted to a jury on the merits. See paragraph two of the syllabus of State v. Frohner, 150 Ohio St., 53.
This claim is completely refuted by the record of the proceedings of the trial, following defendant’s request to withdraw his not guilty pleas and to enter pleas of guilty, as follows:
“The Court: Now, Mr. Ferguson, you understand that you are entering a plea of guilty to a charge of first degree murder, and the penalty for such a charge as provided by the statute is life in the penitentiary; or if a three-judge court recommends mercy after hearing the evidence — that is life in the penitentiary if a three-judge court after hearing the evidence recommends mercy. If the court does not recommend mercy, then the penalty provided by law is death in the electric chair. Now do you understand that?
‘ ‘ The Defendant: Yes.
“The Court: And before undertaking to change your plea here, you have conferred with your family and your attorneys, have you?
“ The Defendant: Yes.
‘ ‘ The Court: And you have had the benefit of the counsel and advice in this regard of Judge Duffy and Mr. Don Miller, your attorneys?
“The Defendant: Yes.
“The Court: The answer is‘Yes?’
“The Defendant: Yes.
“The Court: And you are satisfied to enter this plea of guilty now as your own free and voluntary act? You are?
“The Defendant: Yes.”
All that is sought in this case is an extension of mercy. Although mercy was extended to defendant on the deliberate and premeditated malice count, it was withheld on the count charging killing in the perpetration of a robbery. Although the determination of the degree of the crime by a three-judge court *398 under the provisions of Section 2945.06, Revised Code, is reviewable, the extension of mercy rests within the discretion of such court and is not reviewable. Paragraphs 10 and 11 of the syllabus of State v. Frohner, 150 Ohio St., 53.
Therefore, the judgment of the Court of Appeals should be, and hereby is, affirmed.

Judgment affirmed.

Zimmerman, Matthias, O’Neill and Herbert, JJ., concur.
Taft, C. J., and Gibson, J., dissent.