. Nathan R. Sobel, J.
The defendants on this motion raise defenses of double jeopardy and collateral estoppel. Neither of these separate but related defenses standing alone raises issues which are new—but together they raise some interesting points which require and deserve extended discussion.
In this connection, it might be observed that our appellate courts when confronted with a narrow issue of law which is encompassed within broader legal doctrines or principles, usually decide the specific point at issue. This is necessarily so—for generalizations on the broader issues become dicta and dicta often become precedents.
There is no such limitation on the trial courts for other courts are not bound to follow our decisions whether dicta or precisely on the issue.
Also, occasionally, as in People ex rel. Maurer v. Jackson (2 N Y 2d 259, 267) involving a question of double punishment, the appellate courts properly complain that “ the lower courts have not adequately discussed the question ’ \
The doctrines of double jeopardy, double punishment and collateral estoppel have within narrow limits been previously considered in the decisions but in their broader aspects and in their relationship one to the other, they have not been adequately discussed.
Since this motion requires consideration of all these issues, a discussion at a little greater length than required, may perhaps prove helpful in the future to my brethern on the trial bench.
*219 The “ double ” jeopardy issue is discussed in this opinion only in its narrower application to the included doctrines of “ former acquittal ” and “former conviction ”. The broader label of “ former ” jeopardy is being used in the law reviews to encompass also issues of “new” trials after unjustifiable discontinuance of the first trial (e.g. Wade v. Hunter, 336 U. S. 694) or after reversal following convictions of one count of a multicount indictment (e.g. Green v. United States, 355 U. S. 184) or after reversal of inconsistent verdicts (e.g. United States v. Maybury, 274 F. 2d 899). This distinction between “ double ” and “ former ” jeopardy is convenient but appears to have no basis.
THE FACTS
On October 1, 1959 these defendants were indicted in the United States District Court for the Eastern District of New York for the crime of obstructing by robbery the movement of certain goods in interstate commerce. (See Appendix A; U. S. Code, tit. 18, §§ 1951, 659, 2.) In factual content, the indictment charged the hijacking on September 1, 1959 of a loaded truck operated by one Norman Fine.
Before trial was had in the Federal jurisdiction, these defendants were also indicted in Kings County for robbery and included crimes of grand larceny and assault. It is conceded that the Federal and State prosecutions involve the identical transaction.
However also included in the State indictment was a count of kidnapping. Factually, that count charges that the defendant Lo Cicero in order to facilitate the disposition of the hijacked truck by his accomplice De Sisto, drove the driver victim, Norman Fine, about the city for a period of time before releasing him. The Federal indictment contained no similar count.
The trial of the Federal indictment was had between November 19 and December 18, 1959. The defendant De Sisto was found “guilty as charged ”. The defendant Lo Cicero was found “ not guilty ”.
Both defendants now move to dismiss the State indictment on grounds of double jeopardy. De Sisto, on the ground of “ former conviction ” and Lo Cicero, on the ground of “former acquittal”
The defendant Lo Cicero also contends that the Federal jury • verdict of “ not guilty ” was based solely on the issue cf. identity and could have no other basis. He requests an alternative holding, if he can find no help in the doctrine of double jeopardy, that the People are collaterally estopped from retrying the *220 issue of identity since that issue has been previously litigated and determined against the prosecution in a court of competent jurisdiction, the Federal court of this district.
Both defendants are correct in their contentions. The State prosecution is barred against both defendants on double jeopardy principles and against the defendant Lo Cicero on the doctrine of collateral estoppel.
This motion actually raises a rather narrow issue of the construction of two statutes (Penal Law, § 33; Code Crim. Pro., § 139).
It should be noted at this point (discussed infra) that our State constitutional bar (art. I, § 6) and the Federal constitutional bar (Fifth Amendment) do not apply to successive prosecutions by separate sovereignties. However the New York statutes (supra) bar prosecutions in this State following acquittal or conviction in the courts of other jurisdictions including the Federal courts. Thus the double jeopardy bar between jurisdictions is statutory in New York. With respect to prosecutions within New York State the bar is constitutional.
However a construction of the two statutes in question depends not only upon the gravamen of these statutes but more importantly upon an understanding of the scope of the bar which has been historically granted within the State to prevent successive State prosecutions and also by our Federal courts to prevent successive Federal prosecutions.
I
CONSTITUTIONAL AND STATUTORY DOUBLE JEOPARDY
Our Constitution (art. I, § 6) and the Constitutions of all but four States protect against double jeopardy in successive State prosecutions. (See Brock v. North Carolina, 344 U. S. 424, 429, 435.) The Fifth Amendment protects against double jeopardy in successive Federal prosecutions.
Most of the constitutional provisions protect against second jeopardy for the “ same offense But whether or not those precise words are used, it has been held that since the doctrine of double jeopardy is so deeply rooted in English and American history, its significance and scope is determined not by dictionary construction of the words used, but by reference to its origin and growth. (Green v. United States, 355 U. S. 184, 200, 201; Brock v. North Carolina, 344 U. S. 424, 429.) This much is clearly understood.
*221 But it is in the determination of what constitutes the “ same offense ” that we find wide differences of opinion not only between separate jurisdictions but often within a single jurisdiction.
It is not surprising that this is so. Whether the crimes constitute the “ same offense ” is most often a factual test. The decision is therefore often result oriented.
There are no double standards for double jeopardy. It should not affect the decision one iota whether the first prosecution resulted in a conviction or an acquittal; or if a conviction, whether the punishment imposed was heavy or lig’ht. As said in Ex Parte Lange (18 Wall. [85 U. S.] 163,169): “ The common law not only prohibited a second punishment for the same offense, but it went further and forbid a second trial for the same offense, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted. ’ ’
Yet any detailed study of the cases listed in Appendix B reveals that too often an acquittal or light sentence in the first prosecution influences the prosecutor to prosecute and the court to give a narrow construction to the term “ same offense.” But when the prosecution results in a conviction and the imposition of a “ proper ” punishment, other courts faced with the eternal problem of trying to achieve justice have often held that the two offenses were the same in order to bar the second prosecution. Opposite results on identical factual situations are not uncommon even within the same jurisdiction.
The American Law Institute in its 1935 Study of Double Jeopardy (hereafter cited as A. L. I., Double Jeopardy) concluded that the holding of the courts “ has caused inextricable confusion in the law of double jeopardy.” Most text writers agree. (Lugar, Ctiminal Law, Double Jeopardy, etc., 39 Iowa L. Rev. [1954], 317-329; Kirchlieimer, The Act, the Offense and Double Jeopardy, 58 Yale L. J. [1949], 513.)
For example, in these common fact situations, courts have reached opposite conclusions as to whether these are the same or different offenses.
The theft by a single act of property belonging to several owners.
The robbery of several victims in a single holdup.
The transporting of several females across a State line in a. single automobile trip.
The sale of liquor to several customers during a single evening.
In uncommon fact situations such as “ When is an offense one continuing offense or a series of different offenses f ”, “Are *222 a conspiracy and the substantive offense different offenses'? ” or ‘1 Is the underlying felony an included or separate offense from the felony murder ”, the decisions are even more contradictory and confusing.
But apart from the motivations of particular courts in particular decisions, the fact is that we are left with a jnmble of inconsistent rules each with its variations and exceptions and without any exact standards and guides for making a determination as to what constitutes the “ same offense ”.
And while no pattern in the decisions is discernible, there is no doubt whatsoever that on the whole the decisions favor a narrow construction of the constitutional protection against double jeopardy. A close reading of the decisions must lead to the inescapable conclusion that this narrow construction results not from the desire to afford the public better protection but rather from a dogmatic adherence to outmoded precedent.
This major problem in the interpretation of the constitutional protection was created by an early (1871) decision of Morey v. Commonwealth (108 Mass. 433). In that case the court laid down the narrowest possible construction of the term “ same offense.” “ The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an" offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.”
The Morey decision is of dubious value — dubious because the factual situation did not require such a narrow rule — dubious because based on an older English case (Rex v. Vandercomb [1796], 2 Leach 708, 720, 168 Eng. Rep. 455, 461) designed toi allow a new proceeding against one acquitted because of variance between allegation and proof. For in double jeopardy eases the rule as laid down by Cockbtjbh, Ch. J. (Rex v. Ebrington, 31 L. J. 14 M. C.) is “ It is a fundamental principle that out of the -same state of facts a series of prosecutions is not to be ARowed. ’ ’
Nevertheless up to the present day Morey is quoted by all courts in all States to justify.the- narrowest possible view of the constitutional construction of same offense.-- -This despite the fact that Massachusetts courts have long ago .discarded the Morey test. (Cf. Com. v. Mahoney, 331 Mass. 520.)
Let us examine the definition of “ same offense ” in Morey. It is obvious that it permits subsequent.prosecutions for degrees 0$ the same crime as well as for necessarily included offenses, *223 if the “ accident ” of draftsmanship separates these crimes into different statutes instead of the same statute. Under the Morey test, a defendant acquitted of simple assault, could be tried fox-felonious assault and later again for assault with intent to kill. Each is defined by separate statute and each requires proof of an essential element, i.e. felonious intent and intent “ to kill” which the other does not. The saxne result would follow in robbery prosecutions with its included crimes of assault and larceny. No State today follows this narrow construction of “same offense” but Morey is cited to justify equally unjust results.
The Morey rule has often been referred to as the ‘ ‘ same evidence ” rule. (Discussed supra.) This may be so but ixx a very restrictive sense since the test focuses oxx the elements of the statutory offense rather than the evidence. For under the Morey rule in a prosecution for a “ lesser ” crime, the witnesses may testify to all the facts necessary to make out the elements of the “greater” crime and yet prosecution for the greater crime will not be barred even though the same witnesses will testify to the identical evidence.
We are reminded by the Supreme Court that — “ The right not to be placed in jeopardy more than once for the same offense is a vital safeguard in our society ” and “ If such great constitutional protections are given a narrow grudging application they are deprived of much of their significance.” (Green v. United States, 355 U. S. 184, 198.) Yet until very recently Morey was the rule in the Federal jurisdiction. (Gavieres v. United States, 220 U. S. 338; Burton v. United States, 262 U. S. 344.) A first relaxation of that narrow rule is observable in Abbate v. United States (359 U. S. 187). Mr. Justice Brennan although writing the main opinion for the majority, believed it necessary to append as dicta, a separate opinion on the constitutional construction of the term “ same offense ” (pp. 196-200). The latest and surely the clearest exposition of the Federal rule is contained in the recent opinion of Judge Friendly in this district in United States v. Sabella (272 F. 2d 206, 210-212) (see Appendix B-3). But the Federal rule if not a “ narrow, grudging application ’ ’ is certainly not a broad construction measured by other State standards.
This history of Morey illustrates how habit forming may become the adherence to precedent. For if the precedent is bad, so too is the addiction.
Before discussing the various tests applied in this and other State jurisdictions, it is necessary to consider statutory double jeopardy.
*224 Many of the States, including New York, have also adopted statutes protecting against double jeopardy. Some of these statutes are merely declaratory of and implement the constitutional provision (e.g., Code Grim. Pro., § 9; Report of Commissioners on Practice and Pleading, Dec. 31, 1849, p. 9). Others have been held at least obliquely to extend or broaden the constitutional protection. Certainly if we regard the Morey rule as the constitutional test, statutes such as section 32 of our Penal Law must be regarded as an extension of the constitutional protection. Section 32 of the Penal Law provides: ‘ ‘ When a
prisoner is acquitted or convicted upon an indictment for a crime consisting of different degrees, he can not thereafter be indicted or tried for the same crime in any other degree, nor for an attempt to commit the crime.so charged or any degree thereof.”
This statute antedates the Penal Code of 1881 and has its origin in 2 Revised Statutes 995 (§ 45). There is nothing in its statutory history to indicate an intent to broaden or extend the constitutional protection.
But note that section 32 prohibits prosecution for the greater following acquittal or conviction of the lesser. It is however limited to crimes divided into degrees and attempts to commit such crimes.
Other States have similar statutes. Indeed some of the statutes specifically encompass ‘‘ necessarily included” crimes as well. (See, e.g., State v. Westbrook, 79 Ariz. 116; People v. Benenanto, 175 P. 2d 296 [Cal.]; State v. Calvo, 121 So. 2d 244 [La.].) In such States, irrespective of the wording of such statutes, it has been uniformly ruled that not only does acquittal or conviction of the greater bar prosecution for the lesser but also acquittal or conviction of the lesser bars prosecution for the greater. (People v. Greer, 184 P. 2d 512 [Cal.].) But here again, we find no decision which flatly holds that such statutes are broader than or an extension of the constitutional protection.
In this same connection it is significant to observe that even those States which do not have such statutes uniformly hold that conviction of any degree of a crime or of any ‘1 necessarily included ” crime bars prosecution for any other crime, greater or lesser. (State v. Lobato, 7 N. J. 413; State v. Shannon, 136 Me. 127.)
Perhaps therefore, the conclusion is justified that such statutes are merely declarations of State policy with respect to double jeopardy rather than extensions of the constitutional protection.
New York has another statute which affords statutory protection against double jeopardy (i.e. Penal Law, § 1938). This *225 statute does not deal with the “ same offense ” or “ same crime ” or “degrees of the same crimes” or “ necessarily included” crimes or offenses. Instead it protects against a second prosecution for the same “ act or omission ”. It provides: “ An act or omission which is made criminal and punishable in different ways by different provisions of law, may be punished under any one of those provisions, but not under more than one; and a conviction or acquittal under one bars a prosecution for the same act or omission under any other provision.” This section appeared for the first time in the Penal Code of 1881 but there is nothing in the Report of the Commissioners to indicate its purpose or intent or more specifically whether it was intended as an extension of the constitutional protection. (In passing it should be observed that the section protects against double punishment as well as double jeopardy, discussed infra.) Some of our decisions imply that this statutory protection is an extension of the constitutional protection. (People v. Snyder, 241 N. Y. 81, 83; People v. Savarese, 1 Misc 2d 305 [double punishment] ; People ex rel. Santangelo v. Tutuska, 19 Misc 2d 303; People v. Repola, 280 App. Div. 735, 739-740, affd. 305 N. Y. 740.) Other States which have identical or similar provisions seem to believe that such statutes are merely an expression of the “ same transaction ” rule discussed infra.
The point in discussing the double jeopardy statutes is merely to emphasize that some States have at least liberalized the narrow Morey rule by statute, and to observe that other States which have no statutes and which rely solely on court interpretation of the “ same offense ” provision in their Constitutions give as broad or broader guarantee than do those States with statutes. We may conclude therefore that just as the precise wording of the constitutional provision has no significance, so neither the double jeopardy statutes nor the language used therein need be given any particular significance. Indeed in State v. Thompson (62 N. W. 2d 512) the court specifically stated that a Minnesota statute similar to section 1938 adds nothing to the scope of the constitutional provision.
How broad then is the constitutional protection? What is the “ same offense ”?
To say the very least, the answers are not crystal clear even to the courts.
There has been much discussion in the cases and the texts of the narrower “ same evidence ” rule as contrasted with the broader “ same transaction” rule. (Harris v. State, 193 (Ga. *226 109.) Yet a consideration of the cases (see Appendix B) indicates that courts using different tests have nevertheless reached the same result. It is only the language route which varies. No purpose would be served in detailing the various ways in which the courts have stated these rules in deciding whether a defendant has been previously in jeopardy under the ‘ ‘ same evidence ’ ’ rule or the 11 same transaction” rule or the various modifications of those rules. Others have done that (A. L. I., Double Jeopardy, 1935, “ same evidence ” pp. 27-33, “ same transaction ” pp. 33-61; Lugar, 39 Iowa L. Rev. 317, 319; Kirchheimer, 58 Yale L. J. 513). It is however evident that under neither rule have the courts been given any comprehensive formula for making a determination.
We achieve something of a pattern however when we consider that almost all States now agree that a defendant may not again be subjected to jeopardy if he has been previously acquitted or convicted of the same crime, or any degree, higher or lower of the same crime, or of the greater or lesser of a necessarily included crime. (See Appendix B 1 [a], 2 [a], [b]; Appendix D 1 M.)
It is with respect to separate crimes that the pattern becomes less distinct. (See Appendix B (1) b, c, (2) c, d, (3); Appendix C; Appendix D (1) b, c.) The variety of fact situations in which separate crimes are committed makes it obvious that we cannot escape instance by instance and case by case application of double jeopardy protection.
The appendices endeavor to indicate some of these fact situations. It will be observed that the most frequent problem arises in the “ separate victim ” category. Surprisingly there is less conflict in cases involving offenses against property owned by several persons than'there is in cases involving offenses against the person involving several victims. Thus the embezzlement pver a long period of time of property belonging to several owners is regarded as a single transaction but the robbery of several victims in a matter of seconds is regarded as separate and distinct crimes. Yet as against the public these acts are but one offense. (Cf. Hearn v. State, 55 So. 2d 559 [Fla.]; People v. Beverly, 225 N. W. 481 [Mich.]; State v. Cosgrove, 135 A. 871 [N. J.] ; State v. Hoag, 122 A. 2d 628 [N. J.], affd. 356 U. S. 464; People v. Ciucci, 130 N. E. 2d 40 [Ill.], affd. 356 U. S. 571.) Other fact situations are listed in the appendices. (Conspiracy v. substantive crime, App. B (1) d, B (2) e; Continuing crimes, App. B (1) g, B (2) f, g; Underlying felony v. felony murder, App. B (1) f, B (2) h, i.) These arbitrary divisions of crimes into separate fact categories should not be permitted to blur *227 tiome very significant distinctions made in the decisions. For an excellent analysis of one such fact situation, see Spannell v. State (38 Tex Cr. R. 418).
* * *
A single comprehensive definition of the “same offense” which will encompass all of these fact situations is not possible. But certainly a broader definition is possible and indeed necessary. Our attachment to outmoded precedent should not require the courts to become the agencies of injustice.
There is a further reason for advocating a liberalization of the definition of “ same offense ”. We have witnessed in both State and Federal jurisdictions, the steady proliferation of statutory offenses occasioned by nothing more than careful bill draftsmanship. With such fractionalization of the definitions of crime, it becomes possible for a single act or a series of acts with a single motivating intent to constitute multiple statutory violations (see Note, 65 Yale L. J. 339, 350 [1956]; Note, 24 Mo. L. R. 513, 516 [1959]), and under a restricted or narrow definition of “ same offense ” this “ accident ” of statutory draftsmanship may make the difference in determining under the “ same evidence ” test or the “ same transaction ” test whether or not the subsequent prosecution is for the “ same offense ”.
This problem has received thoughtful consideration by text writers and in the law reviews but only infrequently by the iourts. (See, however, Mr. Justice Bbewjstan’s separate opinion, Abbatte v. United States, 359 U. S. 187, 196-201, supra; Judge Heheb’s dissent, State v. Hoag, 122 A. 2d 628, 634, 636 [N. J.].)
It evidently vexed the A. L. I. in preparation of the Model Penal Code. The Institute very properly and wisely concluded shat the problem would best be solved by a compulsory joinder provision (discussed infra, “ Joinder ”) when “ conduct constitutes more than one offense when the offenses are based on a series of acts or omissions motivated by a purpose to accomplish a single criminal objective and necessary or incidental to the accomplishment of that objective.” (Draft 5, 1.08 (2) b.) But compulsory joinder and joinder are respectively legislative and policy considerations. The point is however that the A. L. I. believed an ‘ ‘ intent ’ ’ test to be a solution when conduct constitutes more than one offense.
A similar test was suggested in the leading case of Spannell v. State (83 Tex. Crim. 410, supra). This court in People v. Savarese (1 Mise 2d 305, 326) a double punishment issue suggested the test — “ Were coll of the acts performed necessary to or incidental to the commission of a single crime and motivated by an intent to commit that crime f ”
*228 It is suggested that when a single act or a series of acts violate separate statutes, the constitutional protection against double jeopardy should apply if the separate crimes thus resulting are committed with a common motivating intent directed toward a single ultimate goal. Under such a definition the intent of the defendant would determine whether it is the “ same offense ” or a different offense.
An “ intent ” test is not of course uncommon in criminal law and has been used to resolve graver and more frequently recurring issues in the law.
The test suggested is by its nature simple and uncomplicated. More important, if applied to all of the cases listed in Appendix B it would resolve every issue of double jeopardy raised therein either as a matter of law or as a question of fact (Code Crim. Pro., §§ 417, 437) with complete fairness to both the prosecution and the defendant. There is no reason why the law should remain anemic on a principle as fundamental as the constitutional protection against double jeopardy.

Double Jeopardy and Double Punishment.

The difference between these separate problems is relevant to this decision only because citations on each issue are used indiscriminately by all courts in the discussion of the other.
Such indiscriminate use however is valid in New York cases on both issues because this State has a statute (Penal Law, § 1938) which expressly forbids double punishment and, more important, prescribes the identical test for both double punishment and double jeopardy. California seems to be the only other State with such a statute (Penal Code, § 654). Thus, to an extent, California’s decisions on both issues of double jeopardy and double punishment may be cited in support of similar issues here. (See Appendix D-l, 2.)
Neither the Federal jurisdiction nor the other States’ jurisdictions have double punishment statutes. Decision from those jurisdictions therefore rest on other basis and are not pertinent.
In the Federal courts, until recently, it has never been clear upon what basis double punishment is prohibited. Early cases implied that double punishment was prohibited by the constitutional prohibition (Fifth Amendment) against double jeopardy. (Ex Parte Lange, 18 Wall. [85 U. S.] 163; Pereira v. United States, 347 U. S. 51; McCoy v. United States, 156 F. 2d 293; Rowley v. Welch, 114 F. 2d 499; Murphy v. United States, 285 F. 801.)
However in Gore v. United States (357 U. S. 386, 392 [1958]) Mr. Justice Frankfurter flatly rejected the contention that double punishment is constitutionally prohibited. The Federal *229 jurisdiction has- no general statute such as our section 1938, Under Gore it is now clear that the- decision whether double o-r single punishment may be imposed rests- upon the interpretation of the intention of Congress in adopting each particular penal statute under which the particular punishment is- imposed. But the Supreme Court has ruled that where- such intention is not clearly expressed, the court will indulge in a “ rule of lenity i.e. a presumption favoring single punishment. (Ladner v. United States, 358 U. S. 169; Heflin v. United States, 358 U. S. 115; Bell v. United States, 349 U. S. 81.) It is obvious that since double punishment under Federal cases rests on an entirely different basis than our statutory prohibition (Penal Law, § 1938) Federal cases on double punishment are not relevant on New York State issues.
When we turn to States other than New York and California it is as yet unclear upon what basis double punishment is prohibited. Corpus Juris states (24 C. J. S., § 1990) that the constitutional prohibition against double jeopardy “ is broad enough to mean that no man can be punished twice for the same offense ’ ’. This is an accurate statement of the case holdings in the several States (People v. Stingeley, 414 Ill. 398). But probably the States will now follow Gore (supra).
In this State the question whether double punishment is constitutionally protected was treated rather obliquely in the recent case of People ex rel. Maurer v. Jackson (2 N. Y. 2d 259). There concurrent punishment was imposed for crimes which the court held were either “ included ” or “ separate ” but arising from a “ single inseparable act ” and therefore double punishment under section 1938 was prohibited. The Appellate Division (1 A D 2d 140) had determined that the imposition of concurrent sentences constituted double punishment in violation of section 1938. Judge Froessel noted that the court had never specifically passed on the question nor had the lower courts “ adequately discussed” the question. The Court of Appeals held that concurrent sentences did not violate section 1938. By so holding, the court in effect decided that double punishment was not constitutionally protected, for if so protected the conviction as well as one of the concurrent sentences would have to be vacated. For the constitutional provision bars prosecution and conviction.
In effect Maurer (supra) follows the United States Supreme Court in Gore (supra) in deciding that double punishment rests on the construction of the statutes — Maurer, the general statute, section 1938, and Gore the specific Federal criminal statute under which the defendant was sentenced.
*230 It might be noted in passing that issues such as Maurer (supra) and a more recent case of People v. Urano (9 N Y 2d 740) would not arise if trial judges would charge included crimes in the alternative. This, proper procedure requires them to do although it is not reversible error to charge such crimes inclusively.
* * *
The foregoing discussion of the essential difference between double jeopardy and double punishment issues is solely to make the point that only New York and California decisions on double punishment are relevant to issues of double jeopardy in this State. The Federal and other State decisions should not be cited since these rest on an entirely different basis.
Another point is also obvious. In this State if our constitutional and statutory protection against double jeopardy receive narrow construction so then too must the statutory protection against double punishment since the test prescribed is identical.
Separate Sovereignties: Penal Law, § 33; Code of Criminal Procedure, § 39.
The instant case concerns a problem of double jeopardy in the area of State-Federal separate sovereignties.
In a series of cases before and since United States v. Lanza (260 U. S. 371) it has been held that the Fifth Amendment’s protection against double jeopardy is not applicable between separate sovereignties and therefore does not protect a defendant from prosecution in the Federal jurisdiction following a conviction or acquittal in a Slate jurisdiction. Recently in Abbate v. United States (359 U. S. 187) the court again reaffirmed the separate sovereignity rule and the principle of federalism upon which it is based. That opinion discusses all cases and all issues raised. (But see Mr. Justice Black’s answer to the federalism principle, p. 262.)
The prosecution of crime is generally a State function. The Federal Government enters the field when there is a Federal interest. Such interest includes narcotics, Federal banks,- illicit liquor traffic, counterfeiting, etc. But in some of these interests, recognizing an equal State concern, the Federal statutes specifically provide that a prior State acquittal or conviction bars Federal prosecution. (United States v. Mason, 217 U. S. 115; United States v. Porria, 255 F. 172.)
In the reverse situation, prior to Lanza (supra) there had been some disagreement among the States whether State double jeopardy provisions protected a defendant against a State prosecution following a Federal conviction or acquittal. But *231 since Lanza, 27 States have ruled that neither their constitutional provisions nor the common-law evidentiary rule of autrefois acquit or autrefois convict barred subsequent prosecution. (See note 24, Bartkus v. Illinois, 359 U. S. 121, 135.)
But some 16 States, including New York, have adopted statutes prohibiting subsequent State prosecutions following acquittal or conviction in the Federal courts or courts of other States.
New York’s statutes are section 33 of the Penal Law and section 139 of the Code of Criminal Procedure.
Penal Law, § 33 — “ Foreign conviction or acquittal a defense
“ Whenever it appears upon the trial of an indictment, that the offense was committed in another state or country, or under such circumstances that the courts of this state or government had jurisdiction thereof, and that the defendant has already been acquitted or convicted on the merits upon a criminal prosecution under the laws of such state, or country, founded upon the act or omission in respect to which he is upon trial, such former acquittal or conviction is a sufficient defense.”
Code of Criminal Procedure, § 139-—“ Conviction or acquittal in another state, a dar, ivhere the jurisdiction is concurrent
‘ ‘ When an act charged as a crime is within the jurisdiction of another state, territory or country, as well as within the jurisdiction of this state, a conviction or acquittal thereof in the former, is a bar to a prosecution or indictment therefor in this state.”
These statutes date back to 1816 and were continued in the Penal Code of 1881. There is nothing significant in their statutory history (see reference to Report of Commissioners under § 739, draft of 1864 discussed in People v. Arnstein, 128 Misc. 176).
It need only be mentioned that the operative statute is section 139 of the Code of Criminal Procedure. The Penal Law provision is applicable only on the trial. As discussed, infra, few issues of double jeopardy reach the trial stage.
The test of double jeopardy in section 33 of the Penal Law is the same “ act or omission ”; in section 139 of the Code of Criminal Procedure it is the same “ act ”.
The task of determining when the Federal and State “ act or omission ” or “ act ” are so much alike that a prosecution under the former bars a prosecution under the latter since there is no statutory history to guide us, depends therefore solely on the scope of the constitutional bar that has been historically granted in this State to prevent successive State prosecutions. *232 In short, the test for successive State prosecution following acquittal or conviction in the Federal courts is the test for successive State prosecutions discussed under the heading, supra. “ Constitutional and Statutory Double Jeopardy.”
The cases in this and other States having separate sovereignty statutory bars are set forth in Appendix C.
It will be noted that the Federal statutes in defining the essential elements of the crime include the allegation of the Federal interest. The State cases properly disregard these allegations in determining whether the State statute defines the “ same offense ”, just as these are disregarded under subsequent offender principles.
Thus in People ex rel. Liss v. Superintendent (282 N. Y. 115) the court held that a Federal prosecution for possession of narcotics barred a State prosecution for the same crime despite the fact that the Federal statute also had a Federal commerce and revenue allegation.
In People v. Mangano (269 App. Div. 954, affd. 296 N. Y. 1011) the court held that a Federal larceny in interstate commerce conviction barred a prosecution for larceny in this State but did not bar a prosecution for burglary since section 406 of the Penal Law makes each a distinctly separate crime. (People v. Snyder, 241 N. Y. 81.)
Particularly well reasoned is the opinion in People v. Parker (175 Misc. 776) in which a State kidnapping charge was held barred by a conviction in the Federal courts for transporting a kidnapped person across State lines. (U. S. Code, tit. 18, § 408 c.)

Due Process

A Federal due process issue under the Fourteenth Amendment may arise following either successive State prosecutions or a State prosecution following acquittal or conviction in the Federal jurisdiction.
There have been a series of such cases before the United States Supreme Court in the past few years. (Hoag v. New Jersey, 356 U. S. 464; Ciucci v. Illinois, 356 U. S. 121; Bartkus v. Illinois„ 359 U. S. 121.)
In each case, by a closely divided court, it was ruled that due process under the Fourteenth Amendment is not violated when a State applies its own decisional law or rules of construction to its constitutional protection against double jeopardy. So narrow was the construction of its law in each of these cases that the Supreme Court intimated that on similar fact situations in successive .Federal prosecutions,, the Fifth Amendment *233 might be deemed violated. Nevertheless the court held that only if a State’s denial of its constitutional protection subjects a State defendant to a hardship ‘ ‘ so acute and shocking ’ ’ as to violate the “ concept of ordered liberty ” which lies at the base of all our civil and political institutions, ’ ’ may State action be reached and barred by the Fourteenth Amendment. (Palco v. Connecticut, 302 U. S. 319, 326.)
It will be impossible to find a fact situation more shocking than Ciurci (supra). It is therefore difficult to conceive how brazen a denial must be in order to shock itself into the protective arms of the Fourteenth Amendment.
A Fifth Amendment issue was before the court in Abbate v. United States (359 U. S. 187). In that case the Supreme Court sustained a Federal conviction following a State conviction. No Federal statute barred the Federal prosecution. The court, as in the Fourteenth Amendment cases, made no secret of its views as to the policy of such successive prosecutions. Joinder
Another observation which needs to be made is that the incidence of double jeopardy issues within any jurisdiction will depend to a real extent on that jurisdiction’s, joinder .statutes. All of the States and the Federal jurisdiction either permit or require joinder of included crimes. Few jurisdictions go as far as New York (Code Grim. Pro., § 279) in permitting joinder of “ two or more acts or transactions constituting crimes of the same or similar character” or separate crimes: “constituting parts of a common scheme or plan.” Few indeed have been the double jeopardy issues before New York’s appellate courts since the adoption of that statute. (See Appendix B-l.) And how convenient for the prosecutor in terms of time and expense. For it should be remembered that joinder of distinctly separate crimes does not deprive the courts of the power to punish consecutively. (Penal Law, § 2190, subd. 4.) There has been little occasion and little excuse for a prosecutor in this State electing to prosecute successively, crimes which may be joined in a single multi-count indictment.
In this same connection, Mr. Justice Brennan in Abbate (359 U. S. 187, 199-200, supra), makes a most convincing and eloquent comparison between the degree of effective harassment by successive prosecutions as compared to the infliction of double punishment under a single multi-count indictment, upon the defendants resources, energies and state of anxiety and unsecurity. He reminds that “It is always within the discretion of the trial judge whether to impose consecutive or concur- *234 rout sentences, whereas, unless the Fifth Amendment applies, it would be solely within the prosecutor’s discretion to bring successive prosecutions based on the same acts thereby requiring the accused to defend himself more than once. Further, separate prosecutions,.unlike multiple punishments based on one trial, raise the possibility of an accused acquitted by one jury being subsequently convicted by another for essentially the same conduct. ’ ’
It is also noted that the American Law Institute in its Model Penal Code in dealing with the connected problems of joinder, double jeopardy and double punishment resolved those difficult problems by the simple device of a compulsory joinder provision. (A. L. I. Penal Code,'Tent. Draft 5, pp. 29-43.)
The point is therefore made that a broad construction of ‘ ‘ same offense ’ ’ in our constitutional safeguard in view of our liberal joinder statutes does not handicap prosecutors but does prevent unnecessary harassment.
A joinder statute is not however effective to bar prosecutions between separate sovereignties. But when not protected by separate sovereignty statutes, the rights of a defendant may nevertheless be safeguarded by policy consideration.
It was the vehement criticism of prosecutors’ policies in Abbate and other cases which led to the Attorney G-eneral’s policy statement discussed infra.
But because of this State’s broad interpretation of the constitutional protection and our liberal joinder statutes, no similar criticism may be made of our State prosecutors for rarely indeed does an issue of double jeopardy reach our courts.

Policy

Much more frequently than is generally realized, policy considerations enter into the prosecutor’s decision in bringing successive prosecutions. Most frequently this occurs when the crimes are distinctly separate and may therefore be successively prosecuted and doubly punished. It is a commonplace for a prosecutor to accept a plea to one indictment to cover other indictments or other crimes known to the prosecutor. Also, when a prosecutor joins distinctly separate crimes in a multicount indictment, he in effect by a policy decision vests discretion in the sentencing judge to impose concurrent or consecutive sentences. (Penal Law, § 2190, subd. 4.)
The point is that there is rarely justification strictly as a matter of policy, even when permitted by constitutional or statutory safeguards, to bring successive prosecutions for such *235 closely connected acts or transactions as raise double jeopardy or double punishment issues.
But occasionally such successive prosecutions are brought because the prosecutor is dissatisfied with a previous acquittal or dissatisfied with a sentence imposed following a previous conviction.
In State v. Midgeley (15 N. J. 574) Judge Brennan, now Mr. Justice Brennan, voiced sharp criticism of such a second prosecution following a previous acquittal. “ The plea of double jeopardy must be honored, though a regrettable defeat of justice may result * * * occasional failure of justices are outweighed by the general personal security * * * such misadventures are the price of individual protection against arbitrary powers.” (See, also, similar comment in People v. Faden, 271 N. Y. 435, 441; United States v. Amy, 14 Md. 199; People v. Welch, 141 N. Y. 266, 280.)
As noted the majority as well as dissenting Justices in the cases listed under “Due Process ”, supra, voiced dissatisfaction with the exercise of the prosecutors’ discretion in those cases.
As a result the Attorney General of the United States adopted a policy which would prevent duplicating Federal-State prosecutions. (Department of Justice Press Release, April 6, 1959.) And, in Petite v. United States (361 U. S. 529), a Fifth Amendment issue involving successive Federal prosecutions for distinctly separate crimes, the Attorney General announced the further general policy “ that several offenses arising out of a single transaction should be alleged and tried together and should not be made the basis of multiple prosecutions, a policy dictated by considerations both of fairness to defendants and of efficient and orderly law enforcement.”
By so doing the Federal Government despite earlier relatively narrow rulings on Fifth Amendment issues, and the absence of statutory safeguards in successive Federal-State prosecutions, has now as a matter of policy aligned itself with those jurisdictions giving broadest protection under double jeopardy safeguards.
Parenthetically it may be noted that it was New York alone among the original colonies which insisted on the incorporation of double jeopardy safeguards in the Bill of Rights. (Green v. United States, 355 U. S. 184, 201.) Our prosecutors have not been unmindful of that tradition.
*236 Now, a practical consideration is worthy of note. If the Attorney General’s policy had been in effect Abbate (supra) would never have reached the Supreme Court. If Illinois had adopted a separate sovereignity statute (e.g. Code Crim. Pro., § 139) earlier, Bartkus would never have reached the court. If the- prosecutors in Hoag and Ciucci had exercised their discretion under the joinder statutes of their respective States neither Hoag or Ciucci would have reached the court. (Incidentally the decision in Hoag makes note that when during argument before the Supreme Court the prosecutor was asked why the crimes were not consolidated in one indictment he was at a loss to explain the reason.)
And applying the same hypothetical considerations to all of the double jeopardy decisions listed in Appendix B, it is evident that none of the issues should have reached the courts.
This indeed is the major point made by this lengthy opinion. It could not have been made except by an extended discussion placing all issues in proper perspective.
II
COLLATERAL ESTOPPEL
The defendant Lo Cicero who was found not guilty in the Federal prosecution requests an alternative holding to the effect that if he can find no help in the doctrine of double jeopardy, the State prosecution is nevertheless barred under the doctrine of collateral estoppel. In this contention he is correct. The State proceedings are barred under both the double jeopardy and the collateral estoppel doctrines.
(1) Collateral Estoppel in Criminal Cases
There is no longer any doubt that collateral estoppel is applicable to criminal eases. Of late years this has been repeatedly affirmed by all Federal and most State courts. (United States v. Oppenheimer, 242 U. S. 85; Sealfon v. United States, 332 U. S. 575; Hoag v. State of New Jersey, 332 U. S. 464, affg. State v. Hoag, 21 N. J. 496; People v. Rodgers, 184 App. Div. 461, affd. 226 N. Y. 671; Harris v. State, 193 Ga. 109,147 A. L. R. 980 and annotations; Res Judicata in Criminal Cases, 27 Tex. L. Rev. 231; Bis Vexari, New Trials and Successive Prosecutions, 74 Harv. L. Rev. 29-43 [1960]; Lugar, Res Judicata [1954], pp. 329-347; Gershenson, Res Judicata in Successive Criminal Prosecution, 24 Brooklyn L. Rev. 12 [1957]; A. L. I. Model Penal Code, Draft 5, pp. 58-59; cases cited in Appendix E.)
It is most helpful in the understanding of collateral estoppel ,to note the analogous doctrines in the civil area. In civil actions, *237 collateral estoppel is one of the subsidiary rules included in the generic doctrine of res judicata. Between the same parties, the rule of “ merger” precludes later suits upon the same cause of action when the prior judgment on the merits is in favor of the plaintiff. The rule of “ bar ” under the same circumstances precludes later suits when the prior judgment is in favor of the defendant. The concepts of “ merger ” and “ bar ”, however, apply not only to those issues actually litigated and determined but also to those issues which might have been litigated and determined. (Restatement, Judgments, §§ 47, 48; Brownell v. Chase Nat. Bank, 352 U. S. 36.) The concept of ‘1 direct estoppel ’ ’ arises when the first judgment is not on the merits and in favor of the defendant. “ Direct estoppel ” however is applicable only as to issues actually litigated and determined. It is emphasized that “ merger”, 11 bar” and “ direct estoppel ” operate only when the suits are on the same cause of action.
But when the subsequent civil action is upon a different cause of action, the judgment on the former cause of action is conclusive between the parties only on those questions actually litigated and determined. This is the doctrine of “ collateral estoppel”. (Restatement, Judgments, § 68; Commissioner of Int. Rev. v. Sunnen, 333 U. S. 591.)
Turning to the criminal area, it will be observed that if the former and the later prosecutions are for the same crime, the doctrine of' double jeopardy will bar the later prosecution. “ Former conviction ” and “ former acquittal ”, like “ merger ” and “ bar”, bars the prosecution in its entirety.
But when the second prosecution is for a different crime (under that State or Federal jurisdictions’ interpretation of “ same offense ” under its constitutional safeguard) “ collateral estoppel ’ ’ will become operative in the criminal area substantially as it does in the civil area.
As stated by Justice Holmes in United States v. Oppenheimer (242 U. S. 85): “ Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, the adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offense. * * * In this respect the criminal law is in unison with that which prevails in civil proceedings. * * * It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.”
*238 Thus when, the constitutional safeguard against double jeopardy does not protect from a subsequent prosecution, collateral estoppel may nevertheless be a defense..
Collateral estoppel in civil cases is based upon the belief that the burden of continued relitigation acts as a drain upon the finances, time and energy of the litigants and results in waste of public funds and the valuable time of courts with crowded dockets to the detriment of other litigants. (Commissioner of Int. Rev. v. Sunnen, 333 U. S. 591.)
The harassment factor is greatly magnified in criminal prosecutions for in addition to time and expense, there is always the danger of conviction and imprisonment. (See Ch. J. Warren’s dissent in Hoag v. New Jersey, 356 U. S. 464, 475.)
(2) Collateral Estoppel v. Double Jeopardy
The doctrines of collateral estoppel and double jeopardy have no real but only an apparent relationship one to the other. The former does not arise unless the subsequent prosecution is for a different offense. If the subsequent prosecution is for the “ same offense ” double jeopardy will bar the prosecution.
But as observed supra, separate jurisdictions and even courts within a single jurisdiction will differ in their interpretation of the meaning of “ same offense ” in the double jeopardy safeguard. What is clearly evident therefore is that those jurisdictions which give a broader construction to “ same offense ” will have few occasions to consider the doctrine of collateral estoppel. Thus New York’s appellate courts have had little occasion to apply the rule. On the other hand in the Federal jurisdiction with the narrow construction of double jeopardy safeguards, issues of collateral estoppel arise more frequently. (See Appendix E.)
Despite the clear distinction between the doctrines, courts frequently confuse the two. (See criticism of such confusion in the dissents in United States v. Waldin, 253 F. 2d 551, 554 and in State v. Orth, 153 N. E. 2d 394, 402 [Ohio]; see, also, Lock v. State, 50 N. E. 92 [Ga.]; People v. Bartkus, 130 N. E. 2d 187 [Ill.]; Fall v. United States, 49 F. 2d 511; United States v. Kaadt, 171 F. 2d 600, 605.) In such cases frequent reference is made to the “ same evidence ” rule and to the “ same transaction ” rule. Of course these rules do not actually apply. These are tests used to determine if the prosecution is for the “ same offense” under the double jeopardy safeguard. Collateral estoppel applies only when the crimes charged are different offenses. However as observed that distinction is often *239 a close issue of fact. But collateral estoppel will also apply when the crimes are distinctly separate in time (People v. Brooklyn & Queens Tr. Corp. (293 N. Y. 484) and in purpose (Mitchell v. State, 140 Ala. 118). Often not only the evidence but the witnesses may be completely different.
The point is that very often the application of collateral estoppel is necessarily lost sight of in the broader doctrine of double jeopardy. What needs to be emphasized, because courts and lawyers frequently overlook it, is that even when the crimes charged are different and a plea of double jeopardy is unavailable, a criminal judgment is conclusive of every issue actually litigated and decided by it, in any later prosecution. (2 Freeman, Judgments, p. 648.)
A procedural point should be noted. Double jeopardy has a constitutional basis. Collateral estoppel does not. (Hoag v. United States, 356 U. S. 464, 471.)
In Abbate (359 U. S. 187,200, n. 4, supra) Mr. Justice Brennan said: “ The protection of an essentially procedural concept such as collateral estoppel * * * is less substantial than the constitutional protection of the Double Jeopardy Clause.”
People v. Rodgers (184 App. Div. 462) refers to “ res judicata ” as a rule of evidence although it is not discussed as such in the standard works on evidence (4 Wigmore, Evidence, § 1346, p. 668). Corpus Juris refers to it as “a rule of universal law ” (50 C. J. S., § 592) which is an unexceptionable description.
Whatever it is however, unlike double jeopardy it has no constitutional basis. It therefore cannot be raised for the first time on appeal or by post-conviction remedy. (People v. Rodgers, 184 App. Div. 462, affd. 226 N. Y. 671; Sunal v. Large, 332 U. S. 174,178-179.)
(3) Between the Same Parties
Although the issue has not been raised in the instant case, it is the fact that the former prosecution was by the Government of the United States and the instant prosecution by the People of the State of New York.
The general rule in the civil area is that for the doctrines of 1 ‘ res judicata ” or “ collateral estoppel ” to be applicable, the parties must be the same.
That issue does not appear to have been decided in the criminal area, except as dicta. In Smith v. United States (243 F. 2d 877) and in People v. Bartkus (130 N. E. 2d 187, 188 [Ill.]) involving successive Federal-State prosecutions, the issue was present but the courts decided the cases on double jeopardy principles—namely that constitutional protection is not appli *240 cable in separate sovereignties. (United States v. Lanza, 260 U. S. 377.) But while double jeopardy is a constitutional safeguard, collateral estoppel is a doctrine universally applicable. Our courts when the question arose in the civil area, either as “ res judicata ” or “ collateral estoppel ” have not hesitated to aPPly the doctrine to judgments of other States. (Hinchley v. Sellers, 7 N Y 2d 287.) The specific issue of different parties was also before the United States Supreme Court in Wolfe v. North Carolina (364 U. S. 177) which reviewed a State court’s refusal in a criminal prosecution to accept, a finding of fact in an earlier federal civil judgment. ■ The court made no mention of the issue of “ different parties ” in the respective cases but decided the case on other grounds. (But, see, Hardy v. Bankers Life Ins. Co., 153 N. E. 2d 269 [Ill.].)
It may also "be significant that the A. L. I. Model Code (Draft 5, pp. 59, 63) proposes that the doctrine of collateral estoppel shall be applicable between different successive Federal-State criminal prosecutions without discussing that the “ Government ” and the “ State” would necessarily be different parties.
Identity of parties and the issue of mutuality of estoppel are often the same issue. It is interesting to note in the civil area (Israel v. Wood Dolson, 1 N Y 2d 116) and in the criminal area (United States v. Rangel-Perez, 179 F. Supp. 619 and cases cited; People v. Prohaska, 134 N. E. 2d [Ill.]) how far the courts have gone in doing away with the requirement of “ mutuality.”
We are dealing in “ res judicata ” and “ collateral estoppel ” with principles of universal jurisprudence grounded in the essential justice of putting an end to litigation in the interest of the individual litigants and the public as well (State v. Hoag, 122 A. 2d 628, 637 [N. J.]).
It would be absurd to hold that the People of the State of New York are >0t bound by a determination made by a jury of New York citizens tilting in a Federal criminal trial.
(4) Applicability of bilateral Estoppel to Issues of Fact and Law

East Issues

In the civil area, the decisions on 4******11 res judicata ’ ’ and ‘ ‘ col-la eral estoppel ’ ’ discuss ‘ ‘ evidentiary facts ”, “ mediate facts ’ ’ and ‘ ultimate facts.” (Evergreens v. Nunan, 141 F. 2d 927; Hinchley v. Sellers, 5 A D 2d 440, revd. on conclusions not definitions 7 N Y 2d 287; Rey v. Duchess of Kingston, 20 Howard St. Tr. 355, 538 [1776].) But in this connection it should be recalled that in “ res judicata” all fact issues which might *241 have been litigated are considered determined while in “ collateral estoppel” only those fact issues actually litigated are considered determined.
On a civil “ collateral estoppel” issue the Court of Appeals in Hinckley (supra) concluded on the fact issue before it: “ This was not a fragmentary finding of an evidentiary fact as the Appellate Division implied, but was a finding essential to the judgment, from which the resolution of the ultimate legal issue necessarily followed. It is perfectly clear from tke record of the New Hampshire proceedings that the quoted factual finding was a necessary step in arriving at the final judgment ”. (Italics mine.)
This should be the rule in criminal cases. But it is at once obvious that while the courts in civil cases from tke record (pleadings, examinations before trial, preliminary motions, etc.) may be able to determine which evidentiary or mediate fact was essential to the ultimate resolution of the issue, such a determination in a criminal case from a general verdict of a jury is more difficult. (In a non jury trial the resolution of the ultimate issue may be clearer.) But nevertheless the legal principle for civil and criminal cases is the same.
It follows as an extension of the same principle that collateral estoppel will bar relitigation of mixed issues of fact and law. (United States v. Moser, 266 U. S. 236, cited with approval in Schneiderman v. United States, 354 U. S. 298; People v. Brooklyn & Queens Tr. Corp., 283 N. Y. 484, 495.)
For example a finding by a jury that a defendant was not guilty by reason of insanity would be conclusive in a later prosecution for another crime committed during the same period. (People ex rel. Thaw v. Lamb, 118 N. Y. S. 389.) Similarly a finding that there was no conspiracy is binding in a later prosecution of the same parties for aiding and abetting in the commission of the substantive crime which was the sole object of the conspiracy. (Sealfon v. United States, 332 U. S. 575; Cosgrove v. United States, 224 F. 2d 146.) Other “ mixed ” issues of fact and law held binding are £< involuntary confessions ”, ‘ ‘ illegal search and seizure ”, 11 existence of fraud or criminal intent ”, etc. (See cases in Appendix E-c.)
In the instant case the issue of identity is clearly an ultimate fact. But in other cases, any finding of fact which is necessary to establish an essential element of any crime or crimes charged in the indictment would be an ultimate fact. The A. L. I. Model Code suggests that the rule of collateral estoppel becomes operative when ££ the former judgment was terminated by an acquittal * * * which * * * necessarily required a determination *242 inconsistent with a fact which must be established for conviction of the second offense.” (Draft 5, § 1.10 (2) p. 56.)
This confines the conclusiveness of the prior judgment to ultimate facts only and is acceptable as a practical solution but it is entirely possible that the People on the trial may be estopped from establishing both evidentiary facts and mediate facts previously adjudicated if it can be determined from the record that these were determined in the first prosecution and were essential to the resolution of the ultimate issue. (Res Judicata on Trial of Grim. Cases, 10 Wash. L. Rev. 198 [1935].)
Of course a prior finding of an “ ultimate fact ” is essential to bar the prosecution. Such an issue can be raised by pretrial motion. But an evidentiary or mediate fact issue can be determined only on the trial when proof contrary to the finding in the previous prosecution is offered. (People v. Kleinman, 168 Misc. 920; United States v. Morse, 24 F. 2d 100.)
In summary, collateral estoppel may be a loar in toto to the bringing of the second prosecution or merely an estoppel to the relitigation of particular facts or mixed issues of fact and law previously determined.

Issues of Lato

Whether collateral estoppel in criminal cases operates to foreclose pure issues of law decided in an earlier prosecution is a problem of great difficulty. (Res Judicata in Successive Criminal Prosecutions, Gershenson, 24 Brooklyn L. Rev. 12, 28-31; A. L. I. Model Penal Code, Tent. Draft 5, compare p. 51 with p. 58.) But it is a problem of relatively small importance since it becomes an effective issue only if the previous conclusion of law is erroneous, If free from error the same conclusion of law will become applicable in the second prosecution either as the “ law of the case” or on general principles of “ stare decisis.”
In the civil area the proposition is that “ res judicata ” under the included doctrines of “bar” and “merger” bars further suits even if the judgment is erroneous as a matter of law on the theory that either, side could have appealed. In the criminal area under the doctrines of “ former acquittal” and “ former conviction ” the prosecution is also bound by erroneous ruling of law. If the erroneous ruling is made prior to trial, the People had the right to appeal. (United States v. Oppenheimer, 242 U. S. 85.) If made during the trial, principles of double jeopardy bar subsequent prosecution, following an acquittal or conviction. For, both res judicata in the civil area and double jeopardy in the criminal area are applicable only when the civil actions are the same or the criminal prosecutions are for the same offense.
*243 But collateral estoppel in both civil and criminal areas is applicable when the causes of action are not the same. The same reasons for binding the parties does not exist.
Therefore in the civil area, collateral estoppel does not bar relitigation of either erroneous conclusions of law or conclusions which have become ‘1 obsolete or erroneous with time ’ ’ or where between the two civil actions there has been an ‘1 intervening judicial declaration” which changed the law. (Commissioner of Int. Rev. v. Sunnen, 333 U. S. 591, 601, 602.)
In the criminal area the law, in logic, should be the same, although no decision discusses the precise point. However in United States v. Smith (4 U. S. C. M. A. 369, 15 C. M. R. 369) a court martial proceeding, the court confronted with an error of law committed on the first trial, held itself bound by such ruling on the second trial on a ground denominated by it “ the same historical transaction rule ’ ’ with a common ‘1 elemental issue ’ ’. Clearly this latter result depended on “double jeopardy” principles rather than “ collateral estoppel.”
There is no sound reason why a defendant who benefited from an erroneous ruling of law in one prosecution should be given permanent immunity in later prosecutions for different crimes.
(5) Issues Actually Determined
An issue of collateral estoppel will arise generally only when the defendant has been acquitted in the first prosecution.
However it is possible that an earlier conviction may determine facts beneficial to a defendant in the second prosecution.
Collateral estoppel may not generally arise in favor of the prosecution because of general principles of confrontation, etc. Yet on mixed issues of fact and law the defendant has been held estopped. (United States v. Rangel-Perez, 179 F. Supp. 619 and cases discussed; State v. Braskett, 162 N. E. 2d 922 [Ohio] ; Steele v. United States, 267 U. S. 505; State v. District Court, 47 P. 2d 649 [Mont.]; United States v. Salvatore, 140 F. Supp. 470.)
But most issues have arisen as a result of a previous acquittal. The difficulty encountered is to ascertain what issues have been determined by the general verdict of acquittal. This is the crux of the problem. In civil cases, issue-narrowing devices exist. In criminal cases, there are no pleadings or examinations before trial. The oral plea of not guilty raises all defenses including inconsistent defenses. The indictment may contain several counts. The defendant need not take the stand or make any defense. The verdict is a general verdict. All of these com *244 pound the difficulty of stating what precise issues were actually determined by the jury.
The answer of course must be found in the record of the first trial. (United States v. De Angelo, 138 F. 2d 466; People v. Rodgers, 184 App. Div. 461, affd. 226 N. Y. 671.) The opening statement of the defendant; the motions made at the close of the People’s case and at the close of the entire case; the Judge’s rulings on these motions, the summations; the Judge’s charge and in particular questions asked by the jury. (Emrich Motors v. General Motors, 340 U. S. 558; People v. Louis, 1 N Y 2d 137; People ex rel. Kwiatkowski v. Trenkle, 169 Misc. 686; State v. Dewey, 292 P. 2d 799 [Ore.]; United States v. De Angelo, 138 F. 2d 466; United States v. Curzio, 170 F. 2d 354; United States v. Kenny, 236 F. 2d 128.)
The cases in which the problem was considered are listed in Appendix E. An interesting, but not surprising, comment is-that the Federal cases are much more liberal in their approach to the doctrine of collateral estoppel than are the State cases. This no doubt is a compensating reaction to the narrow Federal construction of the double jeopardy clause.
Courts have stated the test in various forms —some liberal — some narrow—“ Questions distinctly put in issue and directly determined”; “Issues essential to the verdict”; “Issues necessarily decided ”; “ Issues actually decided ”; “ The plausible and probable explanation”; “Rationally determined”. (Gershenson, Brooklyn L. Rev. 15, supra.)
Of course, if courts insist upon absolute certainty nothing short of clairvoyance is required. For, each of the 12 jurors may have acquitted for a different reason and some for no better reason than a like or dislike of counsel or a general reluctance to find a verdict of guilty. A measure based on absolute certainty constitutes a denial of the existence of the collateral estoppel doctrine in the criminal law.
The New York courts have had infrequent occasion to consider the doctrine in criminal cases, at least, in recent years.
In People v. Grzesczak (77 Misc. 202, 206-208) the court had before it the question whether the People were collaterally estopped from • relitigating an issue of identity following an acquittal of a different crime. Double jeopardy was held not available as a defense. But the court after reviewing the four cases in which our courts have considered the doctrine, held that collateral estoppel was available and the defendant’s former acquittal was a bar to the maintenance of the second prosecution. The case and precedents cited are notable not as much for the result as for establishing the liberal policy followed in *245 New York by early decisions in deciding what issues had actually been determined by the prior judgment.
In People v. Rodgers (102 Misc. 437, affd. 184 App. Div. 461, affd. 226 N. Y. 671) the issue of collateral estoppel was not raised until after the verdict. The Appellate Division stated by way of dicta: ‘ ‘ Although the prosecution was obliged to prove that the defendant was present in order to obtain a conviction, it is quite evident to my mind that a verdict of not guilty as far from necessarily imparting a finding of fact that the defendant was not present. The jury may have been entirely dissatisfied with defendant’s evidence to support his alibi and still of the opinion that the prosecution had not established every element of its case to the jury’s satisfaction beyond a reasonable doubt. However * * * the point relied upon is not properly before the court.”
But an examination of the record in the Rodgers ease (102 Misc. 437, 439) indicates that the defendant did not take the stand and issues other than alibi, were predominant.
In People v. Kleinman (168 Misc. 920) the court inspected the minutes of the previous trial and concluded that the verdict was conclusive on one of the main issues in the second trial. The court did not consider any precise test.
Issues of alibi or identity are predominant in cases involving collateral estoppel.
Typical is the case of State v. Hoag (21 N. J. 496, 122 A. 2d 628, affd. 356 U. S. 464). The issue of collateral estoppel was raised because the defendant had been acquitted in an earlier trial of the robbery of several of his victims and was later convicted of the robbery of still another victim. The collateral estoppel defense was considered by the New Jersey Supreme Court and decided 4 to 3 against the defendant’s contention. Said the majority: “ Nor was the defendant’s plea of alibi necessarily established by the first jury’s general verdict of not guilty. There is nothing to show that the jury did not acquit the defendant on some other ground or because of a general insufficiency in the State’s proof. People v. Rodgers, supra; State v. Barton, 5 Wash. 2d 234, 105 P. 2d 63 (Sup. Ct. 1940). Obviously, the trial of the first three indictments involved several questions, not just the defendant’s identity, and there is no way of knowing upon which question the jury’s verdict turned. Since it does not appear whether the acquittal was based on the determination of the question as to which the estoppel is sought in the second trial, the first verdict is not conclusive in the second trial. See Restatement, Judgments, § 68.” Said the dissenters: “ The verdict and judgment of acquittal on the earlier indict *246 ments of necessity presupposes the nonparticipation of the accused in the armed robbery of Yager. The verdict of acquittal could not have been reached otherwise; the accused’s exculpation of all complicity in the holdup is indubitably a part of the thing adjudged, and so it is conclusive of the ultimate issuable fact of guilt. Unless this be so, then the citizen in such circumstance is subject to successive prosecutions until a convicting jury is found.”
When the due process issue reached the United States Supreme Court, that court divided 5 to 3. (Mr. Justice Brennan took no part since he had joined the dissent in the New Jersey Supreme Court.) The majority on the issue stated: “ In numerous criminal cases both state and federal courts have declined to apply collateral estoppel because it was not possible to determine with certainty which issues were decided by the former general verdict of acquittal (citing cases listed in App. E). Keeping in mind the fact that jury verdicts are sometimes inconsistent or irrational (citing cases) we cannot say that the New Jersey Supreme Court exceeded constitutionally permissible bounds in concluding that the jury might have acquitted petitioner at the earlier trial because it did not believe that the victims of the robbery had been put in fear, or that property had been taken from them, or for other reasons unrelated to the issue of ‘ identity ’. For us to try to outguess the state court would be wholly out of keeping with the proper discharge of our difficult and delicate responsibilities under the Fourteenth Amendment in determining whether a state has violated the Federal Constitution.”
Chief Justice Warren after reviewing the record in the State case wrote for the dissenters: ‘ ‘ Evaluating the record in this case requires no speculation. The only contested issue was whether petitioner was one of the robbers. The proof of the elements of the crime of robbery was overwhelming and was not challenged. The suggestion that the jury might have acquitted because of a failure of proof that property was taken from the victims is simply unrealistic. The guarantee of a constitutional right should not be decided by such an artificial approach. The first jury’s verdict of acquittal is merely an illusion of justice if its legal significance is not a determination that there was at least a reasonable doubt whether petitioner was present at the scene of the robbery. ’ ’
Mr. Justice Douglas, joining in the dissent, added:
“ The time and place were the same. The central issue was the same, for as stated by Mr. Justice Heher dissenting below * * * ‘ here the assaults were simultaneous, the putting in *247 l'ear was but a single act or offense operating alike upon all of the victims of the felonious endeavor at the same time ’ 21 N. J. at page 510, 122 A. 2d at page 635. The basic acts canvassed were the same. Petitioner’s alibi was tendered once more. The testimony of the selfsame witness identifying petitioner as one of the robbers was introduced. This time petitioner was convicted.
“ The resolution of the crucial alibi issue in favor of the prosecution was as essential to conviction in the second trial as its resolution in favor of the accused was essential to his acquittal in the first trial.
¡& #
1 ‘ Hoag was made to 1 run the gauntlet ’ on whether he was present when the violence and putting in fear occurred. Having once run that gauntlet successfully, he may not be compelled to run it again. ’ ’
“ Hoag ” represents a typical case history of the application of the doctrine of collateral estoppel to an issue of alibi.
In State v. Orth (153 N. E. 2d 394) the defendant had been acquitted in Ohio of felony murder. He was then tried and convicted of the underlying felony, robbery. The Supreme Court of Ohio confused double jeopardy principles with those applicable to collateral estoppel. The dissent applying “res judicata ” to the issue of identity ruled that the defendant should be discharged.
An identical issue was before the Georgia Supreme Court in Harris v. State (193 Ga. 109, 147 A. L. R. 980). There the Supreme Court in an exceptionally well-reasoned opinion held that while double jeopardy was not a defense, the issue of identity had been determined in the murder prosecution and the State was estopped from relitigating that issue in the robbery trial.
In State v. Barton (105 P. 2d 63) an identical issue to Orth and Harris was resolved by the Washington Supreme Court against the defendant on the ground that the alibi issue was not “ actually or necessarily adjudicated ” by the verdict of the jury.
In weighing the foregoing decisions insofar as the facts are evidenced in the decisions, one cannot help but conclude that the courts were influenced by the factor that the defendants were acquitted in the earlier prosecution. To say that a court examining a trial record cannot determine the basis for a jury’s verdict, is to impose a test of “ absolute certainty ”. Such proof is never required in a criminal trial. Trial and appellate courts are daily confronted with more solemn and more difficult decisions based on factual evidence. For example, courts may often *248 be required to determine whether evidence is sufficient to establish ‘ ‘ premeditation and deliberation and intent to kill ” in a murder prosecution or indeed “ criminal intent ” in any prosecution. Except in rare cases, the determination of the basis of a jury’s verdict presents a less difficult problem. If courts are required to explore the mental processes of a defendant, they should be able in most cases to explore the mental processes of a jury.
Absolute certainty is not required in either task. A later court should not be permitted to find that the jury may have disbelieved substantial evidence or uncontradicted evidence of the prosecution. This would amount to a rejection of the doctrine of collateral estoppel.
The test should be: “ Could a rational jury have rationally rendered its verdict upon any other basis than that issue which the defendant seeks to foreclose from second consideration.” If the record discloses an alternative hypothesis upon which the verdict could reasonably and rationally be based, the prosecution is not foreclosed.
This test in essence was applied by the Supreme' Court, in reversing both lower courts, in Sealfon v. United States (332 U. S. 675). A careful examination of the fact issues in that case discloses other possible alternative hypothesis upon which the verdict below might have been based. But the court held that the “ core of the prosecutor’s case ” was based upon the “ corrupt agreement * * * which was necessarily adjudicated in the former trial to be non-existent.”
In this regard, it should be noted that Hoag (356 U. S. 464, supra) was an issue of due process under the Fourteenth Amendment. The crux of the decision was whether New Jersey may constitutionally cleave to the most stringent of the tests determining collateral estoppel or whether it could be forced to adopt a less stringest test such as the Federal test of Sealfon. There is little doubt what the decision would be if the facts of Hoag were exclusively in the Federal jurisdiction. (See Cosgrove v. United States, 224 F. 2d 146; Yawn v. United States, 244 F. 2d 146; United States v. Simon, 225 F. 2d 260; Frank v. Mangum, 237 U. S. 308.)
* * #
Again the point is made that despite the actual distinctions between the doctrines of double jeopardy and collateral estoppel the incidence of collateral estoppel issues will depend on whether the courts of a particular jurisdiction give a broad or narrow construction to the “ same offense ” in the constitutional safeguard against double jeopardy. New York’s courts have had *249 few occasions to examine into issues of collateral estoppel while the Federal courts have had many.
A remedy lies therefore in broadening any restrictive application of double jeopardy principles and certainly not in a narrow construction of the doctrine of collateral estoppel for which there already exists liberal analogies in the civil area.
DECISION

Decision on Double Jeopardy Issue

The crimes of which the defendant De Sisto was found “ guilty ” and the defendant Lo Cicero was found “ not guilty ” in the Federal court were robbery (18 U. S. Code, § 1951; Appendix A) and included crimes.
In the instant State indictment, they are both charged with robbery, first degree (Penal Law, § 2120) and included crimes.
The essential elements required to be proved by the Federal statute are identical with the essential elements required to be proved by the State statute. The fact that the Federal statute in addition requires proof that the crime “ affects commerce or the movement of any article in commerce ” has no significance. (People ex rel. Liss v. Superintendent, 282 N. Y. 115; People v. Mangano, 269 App. Div. 954, affd. 296 N. Y. 1011; People v. Parker, 174 Misc. 776.) These prosecutions are for the “ same offense ” no matter which test, narrow or broad, is used. (See “ Constitutional and Statutory Double Jeopardy ”, supra.) Therefore it is clear that insofar as the State prosecution against both defendants for robbery is concerned, it is barred by section 139 of the Code of Criminal Procedure. (See “ Separate Sovereignties ”, Penal Law, § 33; Code Crim. Pro., § 139.)
The State indictment however contains a count of kidnapping. This is a “ separate ’ ’ not a ‘1 necessarily included ’ ’ crime with robbery. In determining whether prosecution for that crime is barred by constitutional and statutory safeguards against double jeopardy we must examine the scope of the constitutional protection as historically granted in this State.
A first question is therefore ‘ ‘ If the defendants had been acquitted or convicted in this State of the robbery, could they have been subsequently prosecuted for the kidnapping? ” An answer is that such a fact situation has never arisen in this State, or indeed in any other State, which is itself indicative that the question should be answered in the negative.
As discussed supra, there is no problem of the scope of double jeopardy with respect to “ necessarily included ” crimes. But *250 whether a crime is necessarily included with another is largely a matter of statutory definition. (See definitions of included and separate crimes in People v. Savarese, 1 Misc 2d 305, 325-326.) Thus, at one time in this State larceny was an included crime with burglary and a person convicted of larceny could not subsequently be convicted of burglary (People v. Smith, 15 Barb. 46). But the Legislature in adopting the Penal Code redefined burglary to make it a separate crime from larceny and provided by statute (Penal Law, § 406) that both crimes may be separately punished. This did not change the scope of the constitutional protection however and on a proper factual situation both crimes may not be successively prosecuted.
In this State kidnapping and robbery are “ separate ” crimes. In other States by statutory definition (seizure, etc., with intent to commit robbery) these are included crimes. That ‘ ‘ separate ” crimes are also protected by the constitutional safeguard against double jeopardy is not to be doubted. (See Appendix B 1 [b]). Thus statutory definition of included crimes is not the test in this or other States. (See Appendix B [2] e, People v. Silverman, 281 N. Y. 457; People ex rel. Micieli v. Webster, 269 App. Div. 887; People ex rel. Ticineto v. Brewster, 241 App. Div. 467; People ex rel. Moskoff v. Weinstock, 21 Misc 2d 14, all involving distinctly separate crimes.)
It is the act or acts of the defendant which determines whether the crimes may be successively prosecuted. Thus when the commission of “ separate ” crimes involve a series of acts, if proof of each or some are a “ material element ” (People ex rel. Maurer v. Jackson, 2 N Y 2d 259, 264) or an “ essential ingredient ’’ (People v. Oliver, 4 A D 2d 28, 33) of the other, successive prosecutions and double punishment are prohibited.
Thus in the instant case the trial of the kidnapping would require proof of the acts essential to the robbery. A later prosecution for robbery would require proof of the acts essential to the kidnapping. The double jeopardy safeguard protects against such successive prosecutions.
Such fine distinctions would not be necessary if the test suggested in the discussion, supra, “ Constitutional and Statutory Double Jeopardy ” was adopted: “ When a series of acts violate separate statutes, the constitutional protection against double jeopardy prevents successive prosecutions if the separate crimes thus resulting are committed with a common motivating intent directed toward a single ultimate goal.” Such a test is broader than the “ same evidence ” or “ same transaction ” tests and is clearer in application. Moreover it is fair to both the prosecutor and the defendant.
*251 But under any test suggested the robbery and the kidnapping in the instant case could not be successively prosecuted.
We have also observed, supra, “ Double Jeopardy vs. Double Punishment ”, that the same test is made applicable in New York and California for both. Cases on double punishment in those jurisdictions are equally applicable in determining the scope of double jeopardy.
This court has decided a double punishment issue on the identical state of facts in the instant case. (People v. Savarese, 1 Misc 2d 305.) California courts have also decided an identical issue. (People v. Kennedy, 226 P. 2d 359; cf. People v. Knowles, 35 Cal. 2d 175; People v. Chessman, 38 Cal. 2d 214.)
Other double punishment cases in this State and in California decide substantially the same issue. (People v. Florio, 301 N. Y. 46; People v. Oliver, 4 A D 2d 28, affd. 3 N Y 2d 684.) In Florio, the kidnapping preceded the rape, and although “ separate ” crimes, were held singly punishable. In Oliver, it was held that the assault and the burglary were ordinarily separate crimes but since the assault was a ‘ ‘ necessary ingredient ’ ’ of the breaking and entry and committed to effect such entry, the crimes could not be doubly punished.
Moreover if we accept the “ repetitive harassment ” theory of Mr. Justice BREnnAn in Abbate (359 U. S. 187, 199-200, supra) our courts should be more zealous in protecting defendants against double jeopardy than double punishment.
In committing the kidnapping, De Sisto and Lo Cicero committed no act not essential to the commission of the robbery for which crime De Sisto has been convicted and Lo Cicero has been acquitted. The prosecution in this State for both the robbery and kidnapping is barred by the constitutional safeguard against double jeopardy.
Although the issue was not raised it should be noted that the conviction of De Sisto is not final since an appeal is pending. The specific issue has not been decided in this State. It was before the Supreme Court of Colorado in Bustamente v. People (317 P. 2d 885, 61 A. L. R. 2d 1217). In that case it was held that the conviction although not final affords the defendant a shield against the second prosecution pending determination of the appeal. Other jurisdictions have ruled otherwise. (See annotations 61 A. L. R. 2d 1224-1228.) It makes little difference which rule is followed since all jurisdictions agree that if the former conviction is reversed it affords no protection to the defendant in the subsequent .prosecution. In the instant case, therefore, the prosecution is stayed against De Sisto providing he consent to the stay and consequent delay.

*252
Decision on Collateral Estoppel Issue

The resolution of the crucial “ identity ” issue is essential to the conviction of Lo Cicero under the State indictment. Its resolution in favor of Lo Cicero was essential to and was actually determined in the Federal trial. A Federal jury has determined that he was not present at the time of the commission of the crime.
This court has read the long record in the Federal trial. The testimony, the motions, the rulings on the motions, the summations and the charge of the court establish that identification was the sole issue. The accomplice of the convicted robber, allegedly Lo Cicero, was masked during the robbery and during the kidnapping. The jury in its general verdict of not guilty decided that the evidence of identification as to Lo Cicero was too uncertain to warrant conviction.
There is no necessity to detail the record in this regard. For the jury found that the Government had established each and every essential element of the crime charged by convicting the accomplice, De Sisto. In such a situation, there is no possible alternative hypotheses for the acquittal of Lo Cicero except on the issue of identity. None is suggested by the People on this motion. Such a finding on an ultimate issue of identity bars the State prosecution against Lo Cicero on the doctrine of collateral estoppel even though the crimes charged therein may be deemed different from the Federal crime.
APPENDIX “A”

Federal Indictment

That on or about the 1st day of September, 1959, within the Eastern District of New York, the defendants frangís j. be sisto, frank lo cicero and Joseph SAPONAro, did obstruct and effect the movement of certain articles and commodities in commerce by robbery, namely, a motortruck owned by the B & R Trucking Company, 17 Jay Street, New York, N. Y., and the contents thereon, to wit: thirty-one (31) cartons of silk which had been consigned as follows: three (3) cartons from United Traders, Osaka, Japan to T. Sakuma, 149 Broadway, New York, N. Y. and twenty-eight (28) cartons from Niehimen Co. Ltd., Yokohama, Japan to S. Shamash & Sons, Inc., 91 Wall Street, New York, N. Y., which goods were moving as and constituted a foreign shipment of freight. (Title 18 United States Code, §§ 1951, 1952.)

Federal Statutes

“ Sec. 1951. Interference with commerce by threats or violence
“ (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
*253 “ (b) As used in this section v " '
“ (1) The term 1 robbery ’ means the unlawful taking or obtaining of personal property from the person.or in the presence of another, against his will, by means of actual or threatened violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.”
APPENDIX “B”
1. New York Cases for Double Jeopardy.
(a) Included Crimes. (Prosecution barred.)
People v. Purcell, 16 N. Y. S. 199.
People v. Lohman, 1 N. Y. 379.
People v. Barber, 57 Barb. 46.
(b) Separate Crimes. (Prosecution barred.)
People v. Silverman, 281 N. Y. 457.
People ex rel. Micelli v. Webster, 269 App. Div. 887.
People ex rel. Ticineto v. Brewster, 241 App. Div. 467.
People ex rel. Moskoff v. Weinstock, 21 Misc 2d 14.
People v. Schuchman, 81 Supp. 2d 745.
People ex rel. Seligson v. Anderson, 50 Supp. 2d 856.
People v. Aldrich, 191 Supp. 899.
People v. Berger, 199 Misc. 543.
People v. Lavopa, 198 Misc. 285.
People ex rel. Kwiatowski v. Trenkle, 169 Misc. 687.
People v. Broderick, 146 Misc. 566.
People v. Fitzgerald, 101 Misc. 695.
(c) Separate Crimes. (Prosecution not barred.)
People v. Snyder, 241 N. Y. 81.
People v. Fennell, 10 A D 2d 78.
People v. Foden, 271 N. Y. 435.
People ex rel. Fish v. Smith, 177 App. Div. 152, affd. 221 N. Y. 590.
People ex rel. Kammerer v. Brophy, 255 App. Div. 821.
People v. Peterson, 159 Misc. 669.
People v. Pearson, 120 Misc. 377.
(d) Conspiracy and Substantive Crime. (Not barred.)
People ex rel. Hart v. Truesdell, 260 App. Div. 884.
People v. Taft, 174 Misc. 1033.
(e) Separate Victims.
People v. Rodgers, 184 App. Div. 461, affd. 226 N. Y. 671 (No bar).
People v. Satchwell, 61 App. Div. 312 (Barred).
(f) Underlying Felony. (Not barred.)
People ex rel. Santangelo v. Tutuska, 19 Misc 2d 308.
(g) Continuing Crime.
People v. Bklyn-Queens Rapid Transit, 283 N. Y. 484 (Not barred).
2. Leading Cases in other State Jurisdictions — Double Jeopardy.
(a) Included Crimes. (Prosecution barred.)
Lynn v. State, 31 Ala. App. 216.
People v. Dugas, 310 Ill. 291.
People v. Blue, 161 Cal. 2d 1.
*254 State v. Shannon, 136 Me. 127.
Comm. v. Mahoney, 331 Mass. 510.
State v. Midgeley, 15 N. J. 574.
State v. Labato, 7 N. J. 137.
State v. De Giosia, 3 N. J. 413.
Comm. v. Comber, 374 Pa. 570.
(b) Separate Grimes. (Prosecution barred.)
State v. Bacom, 159 Fla. 54.
State v. Parmenter, 112 Mont. 312.
(e) Separate Grimes. (Prosecution not barred.)
Ivey v. State, 86 Ga. App. 605.
Medlock v. Comm., 216 Ky. 718.
State v. Lawrence, 146 Me. 360.
Williams v. State, 205 Md. 470.
Comm. v. De Stasio, 8 N. E. 2d 923 (Mass.).
State v. Williams, 229 N. C. 415.
State v. Leibowitz, 22 N. J. 83.
(d) Conspiracy and Substantive Offense. (Not barred.)
State v. Westbrook, 79 Ariz. 116.
People v. Benenanto, 77 Cal. App. 2d 350. (See Note — 53 A. L. R. 2d 619.)
(e) Continuing Offenses. (Barred.)
Hearn v. State, 55 So. 2d 559 (Fla.).
People v. Beverly, 247 Mich. 353.
(f) Continuing Offenses. (Not barred.)
State v. Freeman, 162 N. C. 594.
State v. Hamlin, 171 S. W. 2d 714 (Mo.).
(g) Underlying Felony. (Barred.)
State v. Greely, 103 A. 2d 639, affd. 107 A. 2d 439 (N. J.).
(k) Underlying Felony. (Not barred.)
Harris v. State, 193 G. 109.
State v. Calvo, 240 La. 75.
State v. Orth, 106 Ohio App. 35.
State v. Barton, 5 Wash. 2d 234.
(i) Several Victims. (Prosecution barred.)
Hearn v. State, 55 So. 2d 559 (Fla.).
State v. Wheelock, 216 Iowa 1428.
State v. Anderson, 172 Kan. 402.
State v. Cosgrove, 103 N. J. L. 412.
Smith v. State, 159 Tenn. 674.
C£. Spannell v. State, 83 Tex. Cr. R. 418.
People v. Israel, 269 Ill. 284.
(j) Several Victims. (Prosecution not barred.)
State v. Hoag, 122 A. 2d-628 (N. J.), affd. 356 U. S. 464.
People v. Ciucci, 8 Ill. 2d 138, affd. 356 U. S. 571.
State v. Rosa, 72 N. J. L. 462.
McHugh v. State, 160 Fla. 823.
People v. Allen, 368 Ill. 368.
*255 People v. Mendelson, 264 Ill. 453.
State v. Melia, 231 Iowa 332.
State v. Thompson, 241 Minn. 59.
State v. Fredlund, 200 Minn. 44.
Wright v. State, 37 Tex. Cr. R. 627.
Walker v. State, 146 Tex. Cr. R. 138.
Cf. Spannell v. State, 83 Tex. Cr. R. 418.
State v. Taylor, 185 Wash. 198.
Burton v. State, 226 Miss. 31.
Fay v. State, 62 Okla. Cr. R. 350.
State v. Martin, 154 Ohio St. 539.
3. Leading Federal Gases on Double Jeopardy.
(a) Second Prosecution Barred. (Fifth Amendment.)
United States v. Sabella, 272 F. 2d 206, 210, 211 states the Federal rule. “ The Fifth Amendment guarantees that when the government has proceeded to judgment on a certain fact situation, there can be no further prosecution on that fact situation alone: The defendant may not later be tried again on that fact situation, where no significant additional fact need be proved, even though he be charged under a cafferent statute. (Italics mine.) See, also, discussion of meaning of “same offense” in Fifth Amendment by Mr. Justice Brennan in his separate opinion (Judge Brennan also wrote the majority opinion) in Abbate v. United States, 359 U. S. 187, 196-200, 79 S. Ct. 666, 671-674).
Ex Parte Nielsen, 131 U. S. 176.
Calvarese v. U. S., 216 F. 2d 891, revd. on other grounds 348 U. S. 961.
(b) Leading Federal Cases in which it was held that Double Jeopardy did not bar successive Federal prosecutions.
Burton v. U. S., 202 U. S. 344.
Gavieres v. U. S., 220 U. S. 338.
U. S. v. Williams, 341 U. S. 58.
Johnson v. U. S., 276 F. 2d 304.
U. S. v. Aviles, 274 F. 2d 179.
Riadon v. U. S., 224 F. 2d 304.
U. S. v. Waldin, 253 F. 2d 551, affd. 149 F. Supp. 912.
U. S. v. Campisi, 248 F. 2d 102.
Dist. of Columbia v. Buckley, 128 F. 2d 17 (but see concurring opinion by Rutledge, J.).
Note: (Williams, Aviles, Riadon involve distinctly separate crimes; Waldin and Campisi involve successive prosecutions for conspiracy and substantive crimes.)
APPENDIX “G”
1. New York State Cases on Dual or Separate Sovereignty Convictions (Penal Law, § 33; Code Grim. Pro., § 139).
(a) State Prosecution barred.
People ex rel. Liss v. Supt., 282 N. Y. 115.
People v. Mangano, 269 App. Div. 954, affd. 296 N. Y. 1011.
People v. Eklof, 179 Misc. 536.
People v. Spitzer, 148 Misc. 769.
People v. Arnstein, 128 Misc. 176 (Larceny barred).
People v. Parker, 175 Misc. 776.
*256 (b) State Prosecution not barred.
People ex rel. Winelander v. Denno, 9 A D 2d 898.
People ex rel. Heflen v. Silberglitt, 2 A D 2d 767.
People v. Adamchesky, 184 Misc. 767.
People v. Arnstein, 128 Misc. 176 (Receiving not barred).
Note: (In Winelander there were no facts upon which court could base decision; Heflen involved separate crimes in separate States.)
2. Decisions in Other States having Separate Sovereignty Statutes similar to Penal Law, § 33; Code Crim. Pro., § 139.
(a) State Prosecution barred.
People v. Candelaria, 139 C. A. 2d 432.
State v. Mills, 82 Okla. Cr. R. 155.
Sigmon v. Com., 200 Va. 258.
State v. Wortham, 160 P. 2d 352 (Ariz.).
Notes: 1. (There are no recent cases in which State prosecutions were not barred in those States having separate sovereignty statutes.)
2. (In State v. Smith, 199 Pac. 194 (Ore.) a State prosecution was barred in the absence of statute on the ground that the Federal Government had pre-empted the field; but cf. State v. Rhodes, 242 S. W. 642 [Tenn.].)
3. (Today most States do not bar State prosecutions in the absence of separate sovereignty jeopardy statutes. See note 24, Bartkus v. Illinois, 359 U. S. 121, 135, and discussion of decisions prior to Lanza v. U. S., 260 U. S. 377.)
4. (Illinois did not have a separate sovereignty jeopardy statute, People v. Bartkus, 7 Ill. 2d 138, affd. sub nom. Bartkus v. Illinois, 359 U. S. 121, but has since adopted such a statute. [Ill. Stat. 7/22/59].)
APPENDIX “D”
1. New York Gases on Double Punishment.
(a) Included Crimes. (Single punishment only.)
People ex rel. Maurer v. Jackson, 2 N Y 2d 259.
People v. Ciavarelli, 11 A D 2d 741.
People ex rel. Hornbeck v. Jackson, 6 A D 2d 924.
People v. Bender, 6 A D 2d 926.
People v. Goggin (Murphy), 256 App. Div. 995, affd. 281 N. Y. 611.
Matter of Zovick v. Eaton, 259 App. Div. 585.
People v. Wells, 246 App. Div. 853.
People ex rel. Thornwell v. Heacox, 231 App. Div. 617.
(b) Separate Crimes. (Single punishment only.)
People v. Nelson, 309 N. Y. 231, 247.
People v. Florio, 301 N. Y. 46.
People v. Repola, 305 N. Y. 740, affg. 280 App. Div. 735.
People v. Oliver, 4 A D 2d 28, affd. 3 N Y 2d 684.
People v. Hardin, 12 A D 2d 495 (Excessive).
People v. Flesh, 283 App. Div. 868.
People v. Pauley, 281 App. Div. 223.
People v. Stein, 280 App. Div. 176, affd. 304 N. Y. 834.
People v. Hutchinson, 276 App. Div. 1040.
People v. Valentino, 276 App. Div. 1030.
*257 People v. Fyfe, 273 App. Div. 768 (Consp. and sub. offense).
People v. Morel, 258 App. Div. 971.
People v. Savarese, 1 Misc 2d 305.
(c) Separate Crimes. (Double punishment permitted.)
People v. Skarzewski, 287 N. Y. 826.
People ex rel. Poster v. Jackson, 303 N. Y. 680.
People ex rel. Sams v. Murphy, 8 A D 2d 460 (Separate victims).
Cf. People ex rel. Hornbeck v. Jackson, 7 A D 2d 689.
People ex rel. Tolbert v. Murphy, 25 Misc 2d 647.
2. California Cases Double Punishment.
(a) Double Punishment Barred. (Single only.)
People v. Knowles, 35 Cal. 2d 175.
People v. Darcy, 101 Cal. App. 2d 741.
People v. Kennedy, 101 Cal. App. 2d 316.
People v. Krupa, 64 Cal. App. 2d 592.
People v. Chessman, 38 Cal. 2d 214. (Separate victims.)
People v. Kynatte, 15 Cal. 2d 731.
People v. Greer, 30 Cal. 2d 589.
People v. Clemette, 208 Cal. 142.
(b) Double Punishment Permitted.
Matter of Chapman, 43 Cal. 2d 385.
People v. Tenner, 67 Cal. App. 2d 360.
People v. Slobodian, 31 Cal. 2d 555.
People v. Pickens, 61 Cal. App. 405.
People v. Cuilla, 44 Cal. App. 725.
People v. Brown, 29 Cal. 2d 555.
People v. Dorman, 28 Cal. 2d 846.
People v. Kristy, 4 Cal. 2d 504.
People v. Pearson, 41 Cal. App. 2d 614.
People v. Tanner, 3 Cal. 2d 279.
3. (a) Beading Federal Cases in which Single Punishment only was permitted.
Matter of Snow, 120 U. S. 274.
Prinse v. U. S., 352 U. S. 329.
Eckberg v. U. S., 167 F. 2d 380.
U. S. v. Drake, 250 F. 2d 216.
Bell v. U. S., 349 U. S. 81.
Ladner v. U. S., 358 U. S. 169.
Heflen v. U. S., 358 U. S. 415.
Note: [Bell, Badner and Heflen based on “Rule of Lenity” discussed in opinion.)
(b) Beading Federal Cases in which Double Punishment was permitted.
Gore v. U. S., 357 U. S. 391.
Pereva v. U. S., 347 U. S. 51.
Harris v. U. S., 359 U. S. 19.
Michener v. U. S., 331 U. S. 789, revg. 157 F. 2d 616.
Pinkerton v. U. S., 328 U. S. 640.
Amer. Tob. Co. v. U. S., 328 U. S. 781.
Blockburger v. U. S., 284 U. S. 299.
U. S. v. Rabniovich, 238 U. S. 78.
*258 Morgan v. Devine, 237 U. S. 632.
Albrecht v. U. S., 273 U. S. 1.
Callanan v. U. S., 81 S. Ct. 321.
Note: (Cases in subdivision (3), “although repeatedly cited in cases on both double jeopardy and double punishment in New York decisions are not relevant since they are based pn other grounds as discussed in opinion.” [“Double Jeopardy and Double Punishment.”])
APPENDIX “E”
LEADING CASES ON COLLATERAL ESTOPPEL
(a) Identity Issue. (Held, estopped.)
People v. Grzecszak, 77 Misc. 202.
Harris v. State, 193 Ga. 109.
State v. Emery, 27 N. J. 348.
United States v. De Angelo, 138 F. 2d 466.
United States v. Meyerson, 24 F. 2d 855.
(b) Identity Issue. (Not estopped.)
State v. Barton, 5 Wash. 2d 234.
State v. Hoag, 21 N. J. 496.
State v. Feinziller, 350 P. 2d 399 (Nev.).
State v. Orth, 153 N. E. 2d 394 (Ohio).
Note : See dissents in Hoag and Orth.
(c) Other Issues. (Held, estopped.)
People v. Harris & Blanck, N. Y. L. J., March 22, 1912.
People v. Allen, 1 Park. Cr. 445.
People v. Munroe, 190 N. Y. 435.
People v. Kleinman, 168 Misc. 920.
People v. Purcell, 16 N. Y. S. 199.
People v. Cryan, 123 Misc. 358.
People v. Walker, 25 Misc 2d 942.
Sealfon v. U. S., 332 U. S. 575.
U. S. v. Oppenheimer, 242 U. S. 85.
Frank v. Mangum, 237 U. S. 309.
Yawn v. U. S., 244 F. 2d 146.
U. S. v. Simon, 225 F. 2d 260.
Cosgrove v. U. S., 224 F. 2d 146.
U. S. v. Carlisi, 32 F. Supp. 479.
People v. Mora, 262 P. 2d 594 (Cal.).
Oliver v. Sup. Ct., 267 P. 2d 764 (Cal.).
State v. Greely, 103 A. 2d 639, affd. 107 A. 2d 439 (N. J.).
'Com. v. Perry, 142 N. E. 840 (Mass.).
Parrot v. Com., 287 S. W. 2d 440 (Ky.).
State v. Latil, 92 So. 2d 63 (La.).
Dykes v. State, 99 So. 2d 602 (Miss.).
(d) Other Issues. (Not estopped.)
U. S. v. Kenny, 236 F. 2d 128.
U. S. v. Kaadt, 171 F. 2d 600.
State v. Dewey, 292 P. 2d 799 (Ore.).
People v. Beltram, 210 P. 2d 238 (Cal.).
*259 People v. Erwin, 120 P. 2d 285 (Utah).
Rouse v. State, 97 A. 2d 285 (Md.).
State v. Coblentz, 180 A. 266 (Md.).
People v. Humphrey, 210 S. W. 2d 1002 (Mo.).
State v. Thompson, 39 N. W. 2d 637 (Iowa).
State v. Martin, 282 N. W. 107 (Wise.).
Adams y. U. S. (CA5), 3-7-61.